FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 APR 29 AM 10: 16

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In Re Dependency of: | ) | NO. 68761-1-I |
| | ) | |
| B.M.A.O. | ) | DIVISION ONE |
| dob: 08/03/2008 | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| DEPARTMENT OF SOCIAL & | ) | |
| HEALTH SERVICES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent, | ) | FILED: April 29, 2013 |
| v. | ) | |
| | ) | |
| STEVEN OSTRANDER, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

LAU, J. — In this appeal from an order terminating Steven Ostrander's parental rights to his son, BMAO, Ostrander challenges the sufficiency of the evidence supporting the trial court's conclusion under RCW 13.34.180(1)(d) that the Department of Social and Health Services expressly and understandably offered or provided all necessary and reasonably available services capable of correcting his parental deficiencies within the foreseeable future. Because substantial evidence supports the trial court's finding and because the court's findings as a whole support its conclusions of law terminating Ostrander's parental rights, we affirm.

FACTS

In November 2009, Child Protective Services (CPS) received a referral from a person who had seen then-one-year-old BMAO living in a "filthy" trailer with his father, Steven Ostrander. The referent claimed that the trailer had no refrigerator or running water. CPS workers and a police officer visited the trailer. After looking through the window, the officer confirmed that the trailer "was in a deplorable condition, unacceptable in terms of child safety and well-being." Ostrander agreed to speak with the CPS workers but asked to be interviewed at his landlord's house. He said he did not want visitors in his trailer because he had "trashed" it.

During the interview, a CPS worker asked Ostrander why BMAO had a bump on his head. Ostrander said the child had fallen while sleeping. When the worker asked about a rash near the child's genitals and buttocks, Ostrander acknowledged he had not changed BMAO's diaper in two days. He said he did not have money to buy diapers. He also acknowledged that BMAO recently cut himself on an aluminum can Ostrander left in BMAO's diaper bag. The injury required stitches.

The CPS workers decided to take BMAO into protective custody. While the workers conferred privately with the officer, however, Ostrander disappeared with BMAO. The CPS workers searched Ostrander's trailer and photographed its condition. They observed that his kitchen table was completely covered with cigarette butts, that the toilet was clogged, that a small electrical device had been dropped in the toilet bowl with the cord hanging out, and that the trailer contained no food, diapers, or other necessities for a child. Two days later, CPS located BMAO and took him into protective

custody. Ostrander was arrested and charged with fourth degree criminal mistreatment. He pleaded guilty to the charge.[1]

In March 2010, the trial court entered an agreed order finding BMAO dependent. The court also entered a dispositional order under RCW 13.34.130 requiring Ostrander to participate in a drug and alcohol evaluation, random urinalysis, mental health counseling, and a psychological evaluation. In September 2011, the Department filed a petition to terminate Ostrander's parental rights to BMAO.[2] In April 2012, following a termination trial, the court granted the Department's petition and committed BMAO to the Department's custody. Ostrander appeals.

## ANALYSIS

Parental rights are a fundamental liberty interest protected by the United States Constitution. Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Accordingly, "termination of parental rights should be allowed 'only for the most powerful of reasons.'" In re Termination of S.J., 162 Wn. App. 873, 880, 256 P.3d 470 (2011) (quoting In re Welfare of A.J.R., 78 Wn. App. 222, 229, 896 P.2d 1298 (1995)). "The legislature has prescribed a statutory scheme that balances the parents' liberty interest with the child's right to a safe and healthy environment." In re Dependency of K.D.S., ___ Wn.2d ___, 294 P.3d 695, 699 (2013). Under this scheme, the State must

---

[1] The trial court sentenced Ostrander to 365 days in jail, with 275 days suspended. The court's written findings of fact entered after the termination trial state that Ostrander was "*jailed from November 2009 through January 2011, as a result of his arrest and conviction for Criminal Mistreatment of his child [BMAO]." The parties agree this finding contains a typographical error. It is undisputed that Ostrander was actually jailed from November 2009 to January 2010.

[2] The Department also petitioned to terminate the parental rights of BMAO's mother. That petition was granted in December 2011 and is not at issue in this appeal.

satisfy two prongs before terminating parental rights. First, it must prove the following

statutory elements by clear, cogent, and convincing evidence:

> (a) That the child has been found to be a dependent child;
> (b) That the court has entered a dispositional order pursuant to RCW 13.34.130;
> (c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;
> (d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;
> (e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the future. . . .; [and]
> (f) That the continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.

RCW 13.34.180(1); In re Welfare of A.B., 168 Wn.2d 908, 911-12, 232 P.3d 1104

(2010).[3] "Clear, cogent, and convincing evidence exists when the ultimate fact in issue

is shown by the evidence to be 'highly probable.'" In re Dependency of K.R., 128 Wn.2d

129, 141, 904 P.2d 1132 (1995) (quoting In re Welfare of Sego, 82 Wn.2d 736, 739, 513

P.2d 831 (1973)). Second, the Department must prove by a preponderance of the

evidence that termination is in the child's best interests. RCW 13.34.190(1)(b); A.B.,

168 Wn.2d at 912. The Department may proceed to the second prong only if it satisfies

its burden on the first prong. A.B., 168 Wn.2d at 911. Whether the State met its burden

on both prongs is a question of law we review de novo. In re Dependency of K.N.J.,

171 Wn.2d 568, 574, 257 P.3d 522 (2011).

---

[3] Ostrander only challenges the trial court's finding under RCW 13.34.180(1)(d). He does not dispute any of the other elements under RCW 13.34.180(1). He also does not dispute the court's best interests finding under RCW 13.34.190(1)(b).

When the trial court has weighed the evidence, we ask only whether the court's findings of fact are supported by substantial evidence and whether those findings support the court's conclusions of law. In re the Dependency of P.D., 58 Wn. App. 18, 25, 792 P.2d 159 (1990). "'Substantial evidence' is evidence in sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." In re Welfare of T.B., 150 Wn. App. 599, 607, 209 P.3d 497 (2009). We will not disturb findings supported by substantial evidence. In re Aschauer's Welfare, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980). In addition, unchallenged findings are verities on appeal. In re Dependency of J.A.F., 168 Wn. App. 653, 667, 278 P.3d 673 (2012). Because the fact finder has the advantage of observing the witnesses, "deference to the trial court is 'particularly important in deprivation proceedings.'" K.R., 128 Wn.2d at 144 (quoting In re Welfare of Hall, 99 Wn.2d 842, 849, 664 P.2d 1245 (1983)). Accordingly, we ask "only whether the evidence most favorable to the prevailing party supports the challenged findings, even if the evidence is in conflict." Thomas v. Ruddell Lease-Sales, Inc., 43 Wn. App. 208, 212, 716 P.2d 911 (1986). We do not review credibility determinations or reweigh the evidence. In re Welfare of C.B., 134 Wn. App. 942, 953, 143 P.3d 846 (2006).

Ostrander challenges the sufficiency of the evidence supporting the trial court's finding under RCW 13.34.180(1)(d) that:

> 2.9     Services ordered [in the dispositional order] have been expressly and understandably offered or provided to the father and all necessary services reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided to the father; including drug and alcohol treatment, random urinalysis (UAs), individual mental health counseling, parent coaching and a psychological evaluation with parenting component.

This challenge fails because substantial evidence supports the court's finding.

The Department presented evidence that Ostrander's primary parental deficiencies resulted from drug and alcohol abuse, coupled with mental health issues. Ostrander does not argue that the Department failed to offer or provide services to correct these deficiencies. Instead, he argues that the trial court identified additional deficiencies for which no services were offered or provided:

> In ordering termination, the trial court expressed concern about Mr. Ostrander's prognoses regarding his substance-abuse treatment and mental health, for which he had received services. CP 210-11 (FF 2.19-20, 2.26-30). But the court also based its decision on a number of other factors. In its oral ruling,[4] for example, the court found that the "lack of an actual or concrete plan for housing, care for [BMAO], and self-sufficiency are evidence that [BMAO] would be at risk of harm if the Court were to order reunification." [VRP (Apr. 18, 2012) at] 667. In its written findings, the court found Mr. Ostrander currently unfit because he "lacks the insight to move to the next level of competence in the foreseeable future." CP 211 (FF 2.25). The court further noted its concerns about Mr. Ostrander's "history of poor decision-making," his "housing and employment instability," and his failure "to recognize the risk to the child and his own responsibility for creating the conditions the child was found in." Id., (FF 2.26, 2.27, 2.31).

Appellant's Motion for Accelerated Review at 10-11. He argues that additional services were necessary to correct these newly-identified deficiencies:

> Targeted counseling could have helped [Ostrander] understand issues like the need to maintain a stable residence, appropriate cleanliness standards for a home with a child, children's hygiene and nutrition needs, managing time and transportation issues, and developing specific plans for the future. Follow-up care could have taught him to actually implement and maintain these behaviors. And if he had received assistance locating and securing suitable housing, he may have been able to avoid moving repeatedly. Services like these would have helped Mr. Ostrander remedy the deficiencies that the trial court cited in support of termination.

---

[4] The trial court expressly incorporated its oral ruling into its written findings of fact and conclusions of law.

Appellant's Motion for Accelerated Review at 11-12.

To summarize, Ostrander believes the Department should have offered or provided "[t]argeted counseling," "[f]ollow-up care," "assistance locating and securing suitable housing," and other "[s]ervices like these." Appellant's Motion for Accelerated Review at 11-12. Because the Department did not offer or provide these services, he argues, the trial court erroneously found that "all necessary services reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided . . . ."

Ostrander's argument fails. As the party claiming error, he "must present argument to the court why specific findings of fact are not supported by the evidence and must cite to the record to support that argument." Inland Foundry Co. v. Dep't of Labor & Indus., 106 Wn. App. 333, 340, 24 P.3d 424 (2001); see also RAP 10.3(a)(6) (appellate brief should contain argument supported by "references to relevant parts of the record"); Fisher Props., Inc. v. Arden-Mayfair, Inc., 115 Wn.2d 364, 369, 798 P.2d 799 (1990) (appellate court applies presumption in favor of the trial court's findings). Ostrander cites nothing in the record suggesting that targeted counseling, follow-up care, and assistance locating and securing suitable housing were (1) necessary, (2) reasonably available, and (3) capable of correcting his parental deficiencies within the foreseeable future. He merely assumes those facts.

This court has no obligation to search the record for facts supporting Ostrander's assertions. Mills v. Park, 67 Wn.2d 717, 721, 409 P.2d 646 (1966). Rather, unless the appellant demonstrates error, we will defer to the trial court's finding that the

Department offered or provided all necessary and reasonably available services. K.R., 128 Wn.2d at 144; Fisher Props., 115 Wn.2d at 369.

Ostrander argues, "[A]s with any challenge to the sufficiency of the evidence, Mr. Ostrander does not need to identify evidence to affirmatively support his claim; the lack of evidence in the record on these matters indicates instead that the Department failed to meet its burden at trial." Appellant's Reply Br. at 4. He misstates his burden on appeal. Because he challenges the court's finding regarding the Department's offer of services, he must point to evidence in the record demonstrating the necessity and reasonable availability of additional services capable of correcting his deficiencies in the foreseeable future. K.R., 128 Wn.2d at 144; Fisher Props., 115 Wn.2d at 369. By failing to cite the record, he cannot sustain this burden.

For the first time in his reply brief, Ostrander cites the trial testimony of a psychologist and a social worker to argue that targeted counseling and housing assistance were necessary and reasonably available services. We need not consider this untimely argument. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Regardless, the cited testimony does not support Ostrander's claim. Neither witness testified that Ostrander needed targeted counseling and follow-up care to supplement existing mental health care or that he would benefit from assistance locating and securing suitable housing.

We also note that Ostrander fails to specify what existing and reasonably available services might constitute targeted counseling and follow-up care, and how such services would differ from the mental health care to which he already had access. At trial, no witness used the phrase "targeted counseling." Ostrander also fails to

explain precisely what type of assistance he needed with regard to locating and securing suitable housing. His argument thus fails for the additional reason that his briefing is inadequate. See Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.").

Even if we assume without deciding that targeted counseling, follow-up care, and housing assistance were necessary and reasonably available services capable of correcting Ostrander's parental deficiencies within the foreseeable future, Ostrander fails to explain why the Department was obligated to offer or provide those services in addition to the services it already offered or provided. It is well established that the Department need not offer a parent every potentially helpful service. Instead, "[w]hen a parent is unwilling or unable to make use of the services provided, DSHS is not required to offer still other services that might have been helpful." In re Dependency of T.R., 108 Wn. App. 149, 163, 29 P.3d 1275 (2001).

The record shows that Ostrander was frequently unwilling or unable to make use of the services provided. He was jailed for brief periods in July and August 2010 and again from January to May 2011. Each jail term directly resulted from his failure to appear at review hearings. And even when he was not in jail, Ostrander had trouble following through with existing services. He does not challenge the following findings of fact, which are verities on appeal:

> 2.12   The father entered inpatient treatment in October 2010, but soon left treatment before successful completion indicating he was leaving for to see his ailing grandfather.
> . . . .

2.16    Upon release from inpatient treatment [in June 2011] the father immediately began attending daily sober support group meetings; however, he failed to engage in an outpatient drug and alcohol treatment program until September 2011, despite reminders from his assigned social worker that this was a court ordered service.

. . . .

2.18    The father has had medical funding to support individual mental health counseling over the course of the dependency, but has only periodically accessed those services.

2.19    The father was approved to receive outpatient mental health services at Harborview Medical Center three different times between February and November 2010.  Following each approval for services, outpatient treatment appointments were set and the father failed to return for his scheduled appointments.  Following his last approval the father was limited to only two missed appointments due to his failure to demonstrate treatment adherence.  He did not attend those appointments and his approval for treatment was terminated.

2.20    The father did not engage in individual mental health treatment again until March 2012.

(Citations omitted.)  The court also found that Ostrander's general disinterest in treatment hampered his progress:

2.13    The father was unavailable to participate in services or visit his son for several lengthy periods during the 2-1/2 year dependency.  The father's prolonged absences resulted from his choice to "give up" for a period of time, and as a result of choices regarding his criminal conviction [for] mistreatment of the child.

. . . .

2.33    The father has demonstrated a willingness to participate in services, but has been unable to take full advantage of available programs due in part to his inability to follow-through and in part to his lack of appreciation of the necessity for those services.

Ostrander's inability to follow through with existing services excused the Department from offering additional services, even assuming they were necessary, reasonably available, and capable of correcting Ostrander's parental deficiencies within the foreseeable future.  T.R., 108 Wn. App. at 163.  His challenge to the trial court's finding under RCW 13.34.180(1)(d) fails for this additional reason.

## CONCLUSION

For the reasons stated above, we affirm the termination of Ostrander's parental rights to BMAO.

WE CONCUR: