
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In re Dependency of: | ) | NO. 69330-1-I |
| | ) | |
| M.A. | ) | DIVISION ONE |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| DEPARTMENT OF SOCIAL | ) | |
| AND HEALTH SERVICES, | ) | |
| | ) | |
| Respondent, | ) | UNPUBLISHED OPINION |
| | ) | |
| v. | ) | FILED: August 5, 2013 |
| | ) | |
| MODESTER WILLIAMS, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

LAU, J. — Modester Williams appeals a trial court order terminating her parental rights to her son, MA. We conclude that substantial evidence supports the trial court's findings that the Department of Social and Health Services offered or provided all necessary and reasonably available services and that there was little likelihood that conditions would be remedied so that MA could be returned to Williams in the near future. Because those findings support the court's conclusion of law terminating Williams's parental rights, we affirm the termination order.

FACTS

Williams gave birth to MA on February 17, 2010. Five days later, the Department removed MA from Williams's care and filed a dependency petition. On April 30, 2010, the trial court declared MA dependent as to his mother and entered a dispositional order.[1] Among other facts establishing dependency, the trial court found that Williams had untreated mental health issues, difficulty maintaining sobriety, and a criminal history involving drug use. The court also found that Williams tested positive for cocaine both during her pregnancy and shortly after giving birth. Finally, it noted that Williams had been diagnosed in March 2009 with an unspecified psychotic disorder.

Williams's dispositional order required her to complete a drug and alcohol evaluation and a psychological evaluation with a parenting component, to participate in random urinalysis twice weekly, and to engage in individual mental health counseling. It also required her to follow all treatment recommendations. Williams participated in urinalysis in 2011. The majority of her tests were positive for cocaine. Williams also participated in some form of mental health counseling but did not complete the program.

Scheduling difficulties precluded a psychological evaluation with the initial provider approved by the parties. Williams eventually completed an evaluation approximately three months before trial, with Dr. Robert Deutsch. In his report, Dr. Deutsch noted that Williams had a maladaptive personality style and long-standing psychological issues. He concluded, "It is questionable if Ms. Williams has the capacity

---

[1] MA's father, Aaron Adams, voluntarily relinquished his parental rights. Adams's parental rights are not at issue in this appeal. Williams married Adams prior to trial and took his last name. We refer to the mother as Williams.

to provide a safe environment for her child. Her equanimity is not likely to remain intact under the complex immediate and competing demands of her life."

In January 2012, the Department petitioned to terminate Williams's parental rights. In September 2012, following a three-day bench trial, the court entered an order terminating Williams's parental rights. Williams appeals.

## ANALYSIS

Because parental rights are protected by the United States Constitution, "termination of parental rights should be allowed 'only for the most powerful [of] reasons.'" In re Termination of S.J., 162 Wn. App. 873, 880, 256 P.3d 470 (2011) (alteration in original) (internal quotation marks omitted) (quoting In re Welfare of A.J.R., 78 Wn. App. 222, 229, 896 P.2d 1298 (1995)).

To terminate the parent-child relationship, the Department must satisfy two prongs. First, it must prove the following criteria by clear, cogent, and convincing evidence:

> (a) That the child has been found to be a dependent child;
> (b) That the court has entered a dispositional order pursuant to RCW 13.34.130;
> (c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;
> (d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;
> (e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. . . . ; [and]
>     . . . .
> (f) That the continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.

RCW 13.34.180(1)(a)-(f); In re Welfare of A.B., 168 Wn.2d 908, 911-12, 232 P.3d 1104 (2010).[2] "Clear, cogent, and convincing evidence exists when the ultimate fact in issue is shown by the evidence to be 'highly probable.'" In re Dependency of K.R., 128 Wn.2d 129, 141, 904 P.2d 1132 (1995) (internal quotation marks omitted) (quoting In re Welfare of Sego, 82 Wn.2d 736, 739, 513 P.2d 831 (1973)). Second, the Department must prove by a preponderance of the evidence that termination is in the child's best interests. RCW 13.34.190(1)(b); A.B., 168 Wn.2d at 912. The Department may proceed to the second prong only if it satisfies the first prong. A.B., 168 Wn.2d at 911. Whether the Department met its burden on both prongs is a question of law we review de novo. In re Dependency of K.N.J., 171 Wn.2d 568, 574, 257 P.3d 522 (2011).

When the trial court has weighed the evidence, we ask only whether the court's findings of fact are supported by substantial evidence and whether those findings support the court's conclusions of law. In re the Dependency of P.D., 58 Wn. App. 18, 25, 792 P.2d 159 (1990). "'Substantial evidence' is evidence in sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." In re Welfare of T.B., 150 Wn. App. 599, 607, 209 P.3d 497 (2009). We will not disturb findings supported by substantial evidence. In re Aschauer's Welfare, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980). In addition, unchallenged findings are verities on appeal.[3] In re Dependency of J.A.F., 168 Wn. App. 653, 667, 278 P.3d 673 (2012).

---

[2] The elements in RCW 13.34.180(1)(a)-(c) and (f) are not in dispute.

[3] Williams assigns error to findings of fact 2.13, 2.15, and 2.19 through 2.23. Because she makes no specific argument regarding each of these findings, we deem them verities on appeal. Valley View Indus. Park v. City of Redmond, 107 Wn.2d 621, 630, 733 P.2d 182 (1987) ("A party abandons assignments of error to findings of fact if it

Because the fact finder has the advantage of observing the witnesses, "deference to the trial court is 'particularly important in deprivation proceedings' . . . ." K.R., 128 Wn.2d at 144 (quoting In re Welfare of Hall, 99 Wn.2d 842, 849, 664 P.2d 1245 (1983)). We do not review credibility determinations or reweigh the evidence. In re Welfare of C.B., 134 Wn. App. 942, 953, 143 P.3d 846 (2006).

Offer or Provision of Services

Williams first challenges the trial court's finding under RCW 13.34.180(1)(d) that the Department offered or provided all court-ordered services and all necessary and reasonably available services capable of correcting her parental deficiencies within the foreseeable future. She argues the Department should have offered or provided a psychological evaluation with a parenting component far earlier during the dependency to allow sufficient time to treat the personality, depressive, and anxiety disorders identified by Dr. Deutsch. Had those disorders been identified earlier, she claims, the Department could have offered or provided additional necessary services in the form of "medication therapy and specific counseling for depression and anxiety." Br. in Supp. of Mot. for Accelerated Review at 15.

Our record shows that Williams never argued below that her psychological evaluation with Dr. Deutsch was untimely. Additionally, she never argued that

---

fails to argue them in its brief."); see also Fisher Props., Inc. v. Arden-Mayfair, Inc., 115 Wn.2d 364, 369, 798 P.2d 799 (1990) (party claiming error has the burden to show that a finding of fact is not supported by substantial evidence). We also note that RAP 10.3(g) requires "[a] separate assignment of error for each finding of fact a party contends was improperly made . . . ." Williams improperly included all of her factual challenges within a single assignment of error.

"medication therapy" or "specific counseling for depression and anxiety" were necessary and reasonably available services. We deem the arguments waived under RAP 2.5(a).[4]

Even so, we conclude that substantial evidence supports the trial court's finding. The Department provided a psychological evaluation with a parenting component in May 2012 after its initial referral failed due to a scheduling conflict between Williams and the designated provider.[5] Dr. Deutsch completed his evaluation only three months before trial. But despite the delay, the Department knew, from a preexisting psychological evaluation, that she suffered from an unspecified psychotic disorder. After entry of the dispositional order, the Department addressed this known deficiency by referring Williams for mental health counseling at Sound Mental Health, Community Psychiatric Services, Therapeutic Health Services, and YMCA Family Services. Williams engaged in some form of treatment at Sound Mental Health but did not complete the program. At trial, she could not recall her provider's name and stated only that she was "going to women's groups." VRP (Aug. 20, 2012) at 58. It is undisputed that she engaged in no mental health treatment after leaving Sound Mental Health.

---

[4] A party may claim an error for the first time on appeal if it concerns "(1) lack of trial court jurisdiction, (2) failure to establish facts upon which relief can be granted, [or] (3) manifest error affecting a constitutional right." RAP 2.5(a). Williams does not argue that any of these exceptions applies.

[5] We reject Williams's claim that the Department "conditioned" its provision of the psychological evaluation on her sobriety. Br. in Supp. of Mot. for Accelerated Review at 17. Rather, it made its initial evaluation referral in November 2011, while Williams was engaged in substance abuse treatment. Williams was not sober at that time. Further, the Department provided both mental health and substance abuse referrals at the outset of the dependency. Given these facts, we are not persuaded by Williams's reliance on In re Welfare of S.J., 162 Wn. App. 873, 256 P.3d 470 (2011). Unlike in S.J., our record contains no evidence that the Department withheld mental health treatment while focusing on Williams's co-occurring substance abuse issues.

Contrary to Williams's suggestion, the Department offered necessary and reasonably available mental health services while awaiting the psychological evaluation. Although Dr. Deutsch diagnosed Williams with additional mental health disorders, Williams cites nothing in the record suggesting her newly-diagnosed disorders could not have been addressed by the Department's existing mental health referrals. Actually, the record suggests the referral to Sound Mental Health was adequate. At trial, Dr. Deutsch opined that Williams needed individual counseling to deal with each of her newly-diagnosed disorders. He testified, "Sound Mental Health, again as far as I know, would have individual counselors for psychological issues." VRP (Aug. 21, 2012) at 265.

Williams's social worker, Kim Atchley, testified that she spoke with Dr. Deutsch after the evaluation, and he stated Williams should continue "what she had been doing as to the individual counseling." VRP (Aug. 21, 2012) at 201. Atchley assumed he meant Williams should continue receiving treatment at Sound Mental Health. No witness testified that Williams needed a referral for specialized treatment.

Absent a "cogent argument regarding some service that was not provided," Williams's challenge fails. P.D., 58 Wn. App. at 31. We hold that substantial evidence supports the court's finding under RCW 13.34.180(1)(d) that the Department offered or provided all necessary and reasonably available services capable of correcting Williams's parental deficiencies in the foreseeable future.

Likelihood Conditions Will Be Remedied

Williams next challenges the trial court's finding under RCW 13.34.180(1)(e) that "there is little likelihood that conditions will be remedied so that the child can be returned

to the parent in the near future." The focus of this factor is "'whether parental deficiencies have been corrected.'" In re Dependency of T.R., 108 Wn. App. 149, 165, 29 P.3d 1275 (2001) (quoting K.R., 128 Wn.2d at 144)). What constitutes the "near future" depends on the age of the child and the circumstances of placement. In re Dependency of T.L.G., 126 Wn. App. 181, 204, 108 P.3d 156 (2005). MA was two and a half years old and living in foster care at the time of trial. His "near future" was a matter of months. See P.D., 58 Wn. App. at 27 (six months not in the near future of 15-month-old); Hall, 99 Wn.2d at 844 (for purposes of finding under former RCW 13.34.180(4), eight months was not in the "foreseeable future" of four-year-old ).

When the Department establishes that it offered all necessary and reasonably available services and the evidence shows that the parent failed to substantially improve his or her deficiencies within 12 months after entry of the dispositional order, a statutory presumption arises that reunification is not possible within the near future. RCW 13.34.180(1)(e). The presumption applies here because the Department offered all necessary and reasonably available services and the record contains no evidence that Williams substantially improved her drug- and mental health-related deficiencies within 12 months after entry of the April 30, 2010 dispositional order.

Williams fails to rebut the statutory presumption. Although she demonstrated a short period of sobriety prior to trial, she points to nothing in the record showing progress toward the resolution of her longstanding mental health deficiencies. In an unchallenged finding, the court stated:

> Ms. [Williams], despite participating in individual counseling at Sound Mental Health in 2010, has not participated in mental health therapy since she left that program. Her diagnosis of depression and anxiety are not being treated and

neither is her pattern of behavior that has resulted in her additional diagnosis of a personality disorder.

Finding of Fact 2.13. At trial, Williams testified that she planned to resume treatment. She claimed she scheduled an appointment with a mental health provider and would attend her first session approximately a month after trial. She acknowledged that she never told her social worker about the appointment.

Williams's testimony fails to establish that her mental health issues would be remedied in the near future of her two and a half year old son. Even if Williams attended the scheduled session, she would be nowhere near the conclusion of her treatment. According to the Dr. Deutsch, whom the trial court found credible, Williams suffered from a deep-rooted personality disorder that required "prolonged therapy." Verbatim Report of Proceedings (Aug. 21, 2012) (VRP) at 245. He testified that Williams's disorder, which strongly impacted her parenting ability, was "not something that's going to change much, if it's going to change at all, and certainly not over a short period of time either." VRP at 245. When asked how long it would take to alter Williams's behavior, he agreed that improvement could be expected under the "best-case scenario" in one to two years. VRP at 245. He added, "There's no medication that would address a personality disorder." VRP at 245. Kim Atchley offered similar testimony. She agreed that if Williams resumed counseling after a nearly two-year gap, she would effectively be "starting new." VRP at 210.

Williams points to no concrete evidence showing her mental health issues would have been resolved in the near future of her child. Given the statutory presumption

discussed above, we hold that substantial evidence supports the court's finding under RCW 13.34.180(1)(e) that reunification was not possible in the near future.

CONCLUSION

We affirm the trial court's order terminating Williams's parental rights to MA.

WE CONCUR: