IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re Parental Rights to | ) | No. 34748-6-III |
| | ) | |
| T.T.† | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |

LAWRENCE-BERREY, J. — Mr. T. appeals the termination of his parental rights to

his young son, T.T. He argues (1) the Department of Social and Health Services (DSHS)

failed to follow the notice procedures of the state and federal Indian Child Welfare Acts,

(2) DSHS failed to offer or provide all necessary services, (3) the trial court erred in

finding that there was little likelihood that his parental deficiencies would be remedied in

the near future so that T.T. could be returned to him, and (4) his due process rights were

violated by his trial counsel's failure to object to persistent leading questions by DSHS's

---

† To protect the privacy interests of T.T., a minor, we use his and his parents' initials throughout this opinion. General Order of Division Three, *In Re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses* (Wash. Ct. App. June 18, 2012), http://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber= 2012_001&div=III General Order of Division III, In Re Changes to Case Title (Wash. Ct. App. May 25, 2017), http://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber= 2017_002&div=III.

No. 34748-6-III
*In re Parental Rights to T.T.*

attorney. We reject all of Mr. T's claims and affirm.

## FACTS

*Background*

T.T. was born on February 6, 2015. His mother is Ms. K. She voluntarily terminated her parental rights to T.T. on June 17, 2016.

T.T.'s father is Mr. T. In 2012, Mr. T. was convicted of fourth degree assault—domestic violence. Ms. K. had two children prior to T.T., and Mr. T. was involved in parenting Ms. K.'s second child, A.K. Mr. T.'s and Ms. K.'s parental rights were terminated to A.K. after both parents failed to correct their parental deficiencies.

In March 2015, T.T. was removed from Mr. T.'s care and found to be dependent as to both parents. The court entered dispositional orders for the purpose of remedying the parental deficiencies. Mr. T.'s dispositional order required him to successfully complete a drug/alcohol evaluation and follow recommendations, random drug testing, follow the recommendations of a follow-up psychological evaluation performed by Dr. Paul Wert, complete a mental health assessment and follow recommendations, and complete a domestic violence assessment and follow recommendations.

Dr. Wert's follow-up evaluation for Mr. T. occurred in March 2015. The evaluation noted anger management problems, a history of cannabis dependence, and a

2

lack of parenting experience. The evaluation recommended a chemical dependency evaluation, anger management counseling through Social Treatment Opportunity Programs (STOP), and a parenting assessment.

*Chemical dependency assessment and drug testing*

Mr. T. completed a chemical dependency assessment with NEW Alliance in March 2015. NEW Alliance is a mental health counseling service provider. Mr. T's answers during his chemical dependency assessment did not indicate a substance abuse disorder. NEW Alliance made no treatment recommendations as a result of the assessment.

After a review hearing, the trial court ordered Mr. T. to complete an additional chemical dependency assessment. Mr. T. completed that assessment on September 28, 2015. In that assessment, Mr. T. again denied drug dependency, and NEW Alliance declined to provide treatment.

Between February 2015 and December 2015, Mr. T. tested positive for drugs three times: February 19, 2015 (hydrocodone), February 26, 2015 (hydrocodone), and June 29, 2015 (oxycodone). During that same time, Mr. T. failed to submit to scheduled drug tests on the following dates: March 2, April 30, June 2, July 7, July 13, August 10, September 8, October 15, October 20, October 26, November 11, and November 16.

*Anger management through STOP*

STOP is a certified domestic violence provider. Although the testimony was conflicting on this point, DSHS social worker Jacqueline Bircher confirmed that STOP provides anger management training. According to DSHS social worker Mindy Higbee, STOP "address[es] anger management or it's better said, emotional regulation, being better able to identify your emotions and how you choose to respond to those emotions and what you're trying to accomplish and your consequences." Report of Proceedings (RP) at 139. A requisite for the STOP program was that participants abstain from the use of nonprescription drugs, and self-report instances of such use. The STOP report from July 2015 noted that Mr. T. was in minimal compliance.

*Parenting assessment*

Mr. T. completed a parenting assessment with T.T. on March 20, 2015. The recommendations from that assessment were for Mr. T. to have contact with T.T. in a therapeutic setting, for Mr. T. to complete a parenting instruction class, and for Mr. T. to engage in individual therapy to address his accountability, truthfulness, and anger issues.

Mr. T. began individual therapy with NEW Alliance in March 2015. Within a couple months, he stopped attending appointments.

4

Mr. T. began family therapy with T.T. and a certified therapist, Sue Elg, M.A., in March 2015. After several months of family therapy, it was Ms. Elg's opinion that Mr. T. had not developed the skills to care for T.T. safely, and that Mr. T. showed little to no likelihood of developing those skills in the future. She noted that Mr. T often deflected during family therapy, and wanted to discuss his anger at others and blame them rather than learn basic matters such as following his child's cues. She concluded that Mr. T. did not appear amenable to progress in family therapy.

By December 2015, Mr. T.'s participation with required services was so minimal and unsuccessful that DSHS commenced this termination proceeding. The termination trial occurred in June 2016. DSHS presented witnesses who testified about Mr. T.'s parental deficiencies, the necessary services that were reasonably offered to remedy those deficiencies, Mr. T.'s minimal engagement with most of the services, and Mr. T.'s inability to remedy his parental deficiencies. DSHS argued that termination of Mr. T.'s parental rights to T.T. was in the best interests of T.T. Mr. T. also testified. He generally testified that he loved T.T. and wanted to be a father to him, and that he wanted to provide a safe environment for T.T. The trial court granted DSHS's petition to terminate Mr. T.'s parental rights.

Mr. T.'s appeal followed.

5

No. 34748-6-III
*In re Parental Rights to T.T.*

## ANALYSIS

A.    NOTICE REQUIREMENTS OF ICWA AND WICWA WERE NOT IMPLICATED

Mr. T. argues that DSHS failed to satisfy the notice requirements of the Indian

Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901-1963, and the Washington State

Indian Child Welfare Act (WICWA), chapter 13.38 RCW.  Whether the federal and state

Indian Child Welfare Acts apply to this case is a question of law reviewed de novo.  *See*

*In re Interest of Mahaney*, 146 Wn.2d 878, 886, 51 P.3d 776 (2002).

The federal and state Indian Child Welfare Acts grant tribes the right to intervene

in state court termination proceedings involving an "Indian child." 25 U.S.C. § 1911(c);

*see also* RCW 13.38.090, .040(3)(b).  An "Indian child" is "any unmarried person who is

under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for

membership in an Indian tribe and is the biological child of a member of an Indian tribe."

25 U.S.C. § 1903(4); *see also* RCW 13.38.040(7).  DSHS must notify the Indian child's

tribe or the Bureau of Indian Affairs (BIA) of such pending proceedings and the tribe's

right to intervene "where the court knows or has reason to know that an Indian child is

involved." 25 U.S.C. § 1912(a); *see also* RCW 13.38.080(1).  DSHS responds that there

is no evidence that T.T. could be an Indian child and, for this reason, the notice

6

requirements of the federal and state Indian Child Welfare Acts were not implicated. We agree.

As noted above, an Indian child must either be a member of an Indian tribe or have a parent who is a member of an Indian tribe. Here, there is no evidence that T.T. is a member of an Indian tribe, nor is there any evidence that either Ms. K. or Mr. T. is a member of any Indian tribe. For these reasons, T.T. cannot be an Indian child as defined by ICWA or WICWA. We conclude that the notice requirements for those statutes were not implicated.

B.     ALL NECESSARY SERVICES WERE REASONABLY OFFERED OR PROVIDED

Mr. T. claims that DSHS failed to offer or provide him with all necessary services as required by RCW 13.34.180(1)(d). Specifically, he argues that he was not offered anger management treatment and chemical dependency treatment. We hold that the trial court's findings that he was offered all necessary services are supported by substantial evidence. Furthermore, due to Mr. T.'s unwillingness to cooperate and comply with service providers, any services offered would have been futile.

Where the trial court has weighed the evidence, appellate review is limited to determining whether the factual findings are supported by substantial evidence and whether those findings support the court's conclusions of law. *In re Parental Rights to*

7

*K.J.B.*, 188 Wn. App. 263, 273, 354 P.3d 879 (2015), *rev'd on other grounds*, 187 Wn.2d

592, 387 P.3d 1072 (2017). "Evidence is substantial if it is sufficient to persuade a fair-

minded person of the truth of the declared premise." *In re Welfare of S.J.*, 162 Wn. App.

873, 881, 256 P.3d 470 (2011). The trial court's decision is entitled to deference because

it has the ability to hear the testimony and observe the witnesses. *Id.* The appellate court

will not judge the credibility of the witnesses or weigh evidence. *Id.* The party claiming

error has the burden to show that substantial evidence does not support the challenged

finding. *Fisher Properties, Inc. v. Arden-Mayfair, Inc.*, 115 Wn.2d 364, 369, 798 P.2d

799 (1990). Unchallenged findings of fact are verities on appeal. *In re Welfare of C.B.*,

134 Wn. App. 336, 349, 139 P.3d 1119 (2006).

In proceedings to terminate parental rights, DSHS has the burden of showing that

"all necessary services, reasonably available, capable of correcting the parental

deficiencies within the foreseeable future have been expressly and understandably offered

or provided." RCW 13.34.180(1)(d); *see also S.J.*, 162 Wn. App. at 880. To meet its

burden, DSHS must tailor the services to meet the individual parent's needs. *S.J.*, 162

Wn. App. at 881. However, DSHS is not required to offer services if those services

would be futile. *Id.* "'[E]ven where [DSHS] inexcusably fails to offer a service to a

willing parent, . . . termination is appropriate if the service would not have remedied the

8

parent's deficiencies in the foreseeable future.'" *Id.* (some alterations in original) (quoting *In re Dependency of T.R.*, 108 Wn. App. 149, 164, 29 P.3d 1275 (2001)).

### *1. Anger management services were offered and provided*

Substantial evidence supports the trial court's findings that Mr. T. was offered or provided anger management services pursuant to RCW 13.34.180(1)(d). Throughout the dependency of T.T., Mr. T. failed to make progress in anger management treatment. He failed to attend services, failed to follow program requirements, denied he had problems, and exhibited dishonesty to service providers.

Contrary to Mr. T.'s contention, STOP offered anger management services. By July 2015, STOP noted that Mr. T. was in minimal compliance with its program. Shortly before the termination proceedings, STOP discovered that Mr. T. was out of compliance with its drug abstinence policy and his obligation to self-report. Program management restarted him in the program, and he had more than one year of treatment to complete.

DSHS also referred Mr. T. to NEW Alliance where anger management could be a focus. But Mr. T. twice discontinued that program soon after enrolling.

Contrary to Mr. T.'s contentions on appeal, the evidence would lead a fair-minded person to conclude that Mr. T. was offered or provided anger management treatment, and this finding is supported by substantial evidence.

9

### 2. *Chemical dependency treatment was offered and provided*

Substantial evidence supports that Mr. T. was offered or provided services for chemical dependency. Despite being offered this treatment, Mr. T. never took advantage of it. Mr. T.'s theory is that he was somehow denied drug treatment despite his failure to cooperate with at least two chemical dependency assessments, his refusal to engage in urinalyses, and his denial—even at the time of the termination proceeding—that he had a drug problem.

The following portion of finding of fact IX has not been challenged by Mr. T. and we, therefore, accept it as true:

> [Mr. T.] was clearly and expressly offered and provided multiple drug-alcohol assessments. He was not truthful [regarding] his use. He did admit to others outside the chemical dependency process that he used marijuana daily during much of the dependency. Ultimately, he was noncompliant with successful completion of this service, and he refused to complete a court-ordered updated evaluation. [Mr. T.] was also noncompliant with expressly and understandably offered and provided UAs [urinalyses], having periodic positives for [hydrocodone] without prescription, no shows to most testing dates and admission of ongoing marijuana use.

Clerk's Papers (CP) at 275.

Mr. T. argues that substantial evidence does not support the portion of finding of fact IX that states he refused to quit marijuana via drug treatment or otherwise. To the contrary, Mr. T. was directed to complete assessments for drug dependency and to follow

10

the recommendations of treatment providers. Mr. T. repeatedly lied to NEW Alliance about his historical and current drug problems to avoid treatment, and he attempted to hide his drug dependency by not being tested throughout most of 2015. His noncooperation and noncompliance with court-ordered evaluations and drug testing is tantamount to a refusal to quit marijuana.

### 3. Any services offered would have been futile due to Mr. T.'s dishonesty and failure to cooperate

Finally, even had Mr. T. not been provided with anger management or drug related services, Mr. T. has demonstrated that such services would have been futile. Due to Mr. T.'s failure to cooperate with service providers, remain drug free, and be honest about his current and past drug use, the provision of anger and drug related services would have been futile and, therefore, were not required. "The provision of services is futile where a parent is unwilling or unable to participate in a reasonably available service that has been offered or provided." *In re Parental Rights to K.M.M.*, 186 Wn.2d 466, 483, 379 P.3d 75 (2016). Such was the case here as the trial court found in unchallenged findings of fact that "[Mr. T.] aborted significant services (such as mental health treatment, updated drug/alcohol and urinalyses) and failed to cooperate with other services (such as parenting services and anger management/DV [domestic violence] services)." CP at 271.

11

Accordingly, the trial court's findings that Mr. T. was offered or provided services for anger management and chemical dependency treatment, and that any additional services would have been futile, are supported by substantial evidence.

C.    LITTLE LIKELIHOOD THAT CONDITIONS WOULD BE REMEDIED

Mr. T. asserts that the services were inadequate in this case, so a finding that there was little likelihood of conditions being remedied in the near future was premature and not supported by substantial evidence at trial.

In order to terminate parental rights, DSHS must prove "[t]hat there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future." RCW 13.34.180(1)(e). The emphasis of this element is whether parental deficiencies have been corrected. *In re Welfare of M.R.H.*, 145 Wn. App. 10, 27, 188 P.3d 510 (2008). RCW 13.34.180(1)(e) provides the following rebuttable presumption:

> A parent's failure to substantially improve parental deficiencies within twelve months following entry of the dispositional order shall give rise to a rebuttable presumption that there is little likelihood that conditions will be remedied so that the child can be returned to the parent . . . .

If the parent is unable to resolve his deficiencies, then the presumption applies and the burden of production shifts to the parent, but DSHS must still convince the court that it is

highly probable that the parent would not improve in the near future. *In re Welfare of T.B.*, 150 Wn. App. 599, 608, 209 P.3d 497 (2009).

In the present case, there is substantial evidence to support the finding that there is little likelihood that the parental deficiencies would have been remedied in the near future. From the testimony of Mr. T. and from several of DSHS's witnesses, the father's deficiencies had not improved from the time of the order of dependency. Brain Culler, T.T.'s court-appointed special advocate stated, "there's no likelihood of [Mr. T.]'s situation improving in any foreseeable future and at least another year in some services and T.T. cannot wait that long." RP at 311. Mr. T.'s therapist, Sue Elg, opined that "there's no way that this parent is capable on any level to take care of this child and provide for his needs ongoing." RP at 104. Because Mr. T. failed to substantially improve his deficiencies within 12 months after the order of dependency, the rebuttable presumption arises that there is little likelihood that conditions would improve so that the child could be returned to the parent. Also, because we rejected Mr. T.'s contention that all necessary services were not reasonably offered or provided, we reject his associated argument that additional services were required that would have likely corrected his parental deficiencies. We conclude that substantial evidence supports the trial court's

finding that there was little likelihood that Mr. T.'s parental deficiencies would be remedied so that T.T. could be returned to him in the near future.

> D.    INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. T. claims that his due process rights were violated because his trial counsel repeatedly failed to object to leading questions. Because Mr. T. has not met his high burden of showing that choosing not to object was not a product of legitimate trial strategy, his claim fails.

Washington law guarantees the right to counsel in termination of parental rights proceedings. RCW 13.34.090(2). Whether a proceeding satisfies constitutional due process is a question reviewed de novo. *In re Welfare of J.M.*, 130 Wn. App. 912, 920, 125 P.3d 245 (2005). In criminal proceedings, the test for effective assistance of counsel is that outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). However, the right to counsel in parental termination proceedings is left to the states. *J.M.*, 130 Wn. App. at 921 (citing *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 33-34, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981)). "No published Washington case has expressly held that *Strickland* applies to the performance of counsel representing parents in proceedings to terminate their parental rights." *J.M.*, 130 Wn. App. at 920.

14

Here, DSHS argues that *Strickland* should apply, noting that the alternative standard outlined in *In re Moseley*, 34 Wn. App. 179, 184, 660 P.2d 315 (1983) is less favorable to the parent. Without determining which standard must apply, we hold that Mr. T.'s claim fails under even the heightened *Strickland* standard.

To prevail on an ineffective assistance of counsel claim, the party claiming ineffective assistance must prove (1) that the performance was deficient, and (2) that the petitioner was prejudiced by the deficient performance. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (citing *Strickland*, 466 U.S. at 687). As to the first requirement, the petitioner must show counsel's performance fell below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Judicial scrutiny of the trial counsel's performance will be "highly deferential," and the appellate court will make "every effort . . . to eliminate the distorting effects of hindsight." *Id.* at 689.

This court will presume that a failure to object to leading questions is a legitimate trial tactic and the party claiming ineffective assistance carries the burden to show how such failure is not the product of legitimate strategy or tactics. *State v. Johnston*, 143 Wn. App. 1, 20-21, 177 P.3d 1127 (2007). Here, Mr. T. appends extensive portions of the trial transcript without identifying why any particular absence of an objection would not be proper strategy. In addition, the trial court commented on the record that Mr. T. was

represented ably by his trial counsel. We note that a parent's counsel is provided reports from DSHS's professional witnesses well before trial. For this reason, they know what these witnesses will say. An objection of leading will, therefore, usually cause a professional witness to elaborate on his or her damaging conclusions, thus strengthening DSHS's case. We conclude that Mr. T. has not met his burden to show that his counsel's performance was objectively deficient, and we need not reach the second prong of the *Strickland* analysis.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Fearing, C.J.

Korsmo, J.

16