[Nos. 55135–9, 55845–1. En Banc. October 18, 1990.]

FISHER PROPERTIES, INC., *Respondent,* v. ARDEN–
MAYFAIR, INC., *Appellant.*

*Helsell, Fetterman, Martin, Todd & Hokanson,* by *William A. Helsell* and *Bradley H. Bagshaw,* for appellant.

*Graham & Dunn,* by *Edward W. Pettigrew, Douglas C. Berry,* and *Frederick O. Frederickson,* for respondent.

UTTER, J.—Arden–Mayfair, Inc. (Arden) appeals from a judgment entered by the trial court on remand from this court's decision in *Fisher Properties, Inc. v. Arden–Mayfair, Inc.,* 106 Wn.2d 826, 726 P.2d 8 (1986). We affirm in part and reverse in part.

This case involves a dispute over Arden's obligations under a lease originally executed in 1923 between the parties' predecessors in interest. Arden's predecessor leased from Fisher's predecessor several lots on the Seattle tidelands for the purpose of building an ice cream manufacturing facility. The lease required the lessor to construct the building and the lessee to install all machinery and equipment necessary for the operation. Paragraph 27 of the lease made these installations part consideration for the lease. The lease also contained provisions requiring the lessee to repair the premises and to restore the premises to their original condition if the lessor so desired.

An addendum to the lease executed in 1926 incorporated most of the original lease but not paragraph 27. The lease was periodically renewed until 1978 when Arden gave 1 year notice of termination, as required by the lease, and vacated the property. Fisher exercised its option under the lease to require Arden to return the property to its original condition.

In 1981, Fisher brought suit alleging Arden violated the repair and restoration clauses of the lease, and for failure to comply with building codes. In 1983, Fisher added a claim for commissive waste and requested treble damages. After an 11–week trial, the court held that Arden had breached its obligations under the lease and committed waste. The trial court interpreted original condition of the premises to mean the configuration before the installation of equipment

and features pursuant to paragraph 27 of the original lease, and held that Arden did not return the premises to their original condition. The trial court awarded damages for repair and restoration costs, violation of building codes, lost rental, treble damages for waste and attorney fees.

Arden appealed directly to this court. In 1986, this court affirmed the damages for repair costs, lost rental and commissive waste, but reversed the awards for restoration costs, violation of codes, and attorney fees. *Fisher Properties, Inc. v. Arden–Mayfair, Inc.,* 106 Wn.2d 826, 726 P.2d 8 (1986). The court held that installations made by Arden's predecessor during the construction of the building were part of the original condition and the lease did not require Arden to remove them. *Fisher,* 106 Wn.2d at 835. The court held that Arden was not subject to damages for code violations because no government authority had ordered Arden to make repairs or shut down for noncompliance and there was no evidence of such governmental orders. *Fisher,* at 842–43. The court reversed the attorney fees award because the trial court awarded Fisher almost all of its claimed attorney fees, but the statute authorized attorney fees only for the commissive waste claim. *Fisher,* at 849–50. The court ordered the trial court to award fees for only that time spent on the waste claim. *Fisher,* at 850.

The decision clarified the appropriate measure of damages for breach of lease. While the general measure of damages is the cost of returning the premises to the condition required by the lease, the diminution in market value of the premises caused by the breach is to be used if less than the cost of restoration. *Fisher,* at 843.

The court remanded to the trial court for a reassessment of restoration damages and attorney fees. *Fisher,* at 855. Arden moved for reconsideration claiming a new trial on damages was necessary. The court denied the motion.

On remand, the trial judge declined to take additional evidence on diminution in value and reached his findings based solely on the record produced at trial. He held that the cost of restoration was less than diminution in value

and awarded damages on that basis. He excluded from damages the items which the lessee installed pursuant to the original lease and reduced the award to reflect this court's decision concerning the building codes and the garage. He held that the original condition of the warehouse did not include equipment installed in the initial construction. He reduced the attorney fees by 20 percent for time spent outside of trial and by 15 percent for time spent in trial. The trial judge added fees for time spent on remand on calculating the fees. He directed interest on the modified judgment to run from the date of the original judgment in 1983.

Arden appealed and we granted review. Fisher cross-appealed on the issue of whether the trial court should calculate attorney fees using counsel's historical or current hourly rates.

## I

■ Damages for breach of lease are determined by two methods: the cost of restoration of the premises to a prescribed condition or the diminution in market value of the property as a result of the failure to comply with the lease. The appropriate measure of damages is the method which yields the lesser amount. *Fisher,* at 843–44; 2 M. Friedman, *Leases* § 18.1 (2d ed. 1983). The plaintiff must come forward with evidence on only one of the measures of damages and then the burden of production shifts to the defendant to present evidence that the other measure of damages is less.

Arden alleges the trial court erred in refusing to take additional evidence on the issue of diminution in market value and in reaffirming its original finding that diminution in market value exceeded the cost of restoration. Arden claims this court's mandate in *Fisher* required the trial court to make findings on the value of the premises as they would have been if Arden performed its obligations and the actual value of the premises as Arden left them. The difference between the two values is the diminution in market

value. The trial judge reaffirmed his finding that the value of the premises had Arden complied with the lease would have been $1,442,221 as of the date of termination. The trial judge did not make a finding on the actual value of the premises. Nonetheless, he was convinced that diminution was greater than the cost of repair and restoration.

This court did not order a new trial in *Fisher,* rejecting the idea that a new trial was necessary by denying Arden's motion for reconsideration. *Fisher* required the trial court to allocate the burdens of proof as indicated and then determine which measure of damages was the lesser, and thus, the proper one. It was within the trial judge's discretion to take additional evidence. *See Old Windmill Ranch v. Smotherman,* 69 Wn.2d 383, 391, 418 P.2d 720 (1966) (cause remanded for additional findings; the trial court may take additional evidence as it deems necessary in order to make findings). His decision not to allow new evidence was not an abuse of his discretion given the voluminous trial record on the measure of damages.

The trial court found that the cost of restoration was the proper measure of damages. Arden challenges the trial court's findings of fact. Accordingly, the issue of sufficiency of the evidence, which we declined to consider in *Fisher,* is now squarely before the court. *Ridgeview Properties v. Starbuck,* 96 Wn.2d 716, 719, 638 P.2d 1231 (1982) (where the trial court has weighed the evidence, appellate review is limited to determining whether the findings of fact are supported by substantial evidence). There is a presumption in favor of the trial court's findings, and Arden, the party claiming error, has the burden of showing that a finding of fact is not supported by substantial evidence. *Leppaluoto v. Eggleston,* 57 Wn.2d 393, 401, 357 P.2d 725 (1960).

We find a failure to show there is not substantial evidence to support the trial judge's holding. The trial court expressly found Fisher's witnesses credible and Arden's witnesses not credible. The trial court was in a better position to evaluate the credibility of witnesses and we will not substitute our judgment for that of the trial

court in reviewing findings of fact. *Davis v. Department of Labor & Indus.*, 94 Wn.2d 119, 124, 615 P.2d 1279 (1980).

Diminution in market value is the difference between the value of the premises in good condition and the value of the premises in the condition the lessee left them. There is substantial evidence to support the trial judge's finding of the market value of the premises had Arden left them in good condition.

Fisher's witness, William Krippaehne, calculated the market value of the premises had Arden complied with the lease using the income approach to value.[1] He testified as to the total gross income of the property based on the square footage and the rental rate per square foot. He derived these figures from a report prepared by his associate, Gordon Logan. The report was admitted into evidence and Mr. Logan testified as to the basis for his conclusions concerning rental rates. His conclusions were premised on the buildings' general utility for warehousing, light manufacturing, storage and office space, and his knowledge of rates for comparable buildings.

Mr. Krippaehne then determined the net operating income using three different vacancy rates—30 percent, 15 percent, and 7 percent vacancy. He divided the net operating income by a capitalization rate of 9.5 percent. He testified that this capitalization rate was the most appropriate given the real estate market in that area and inflation at the time. The three resulting values for the premises corresponding to each vacancy rate were $1,443,221, $1,752,483, and $1,917,423. Mr. Krippaehne opined that the most likely

---

[1]The income approach is one of several methods of valuing property. This method determines the value of an income stream by using a formula to derive net operating income. The total gross income less a vacancy allowance less operating expenses equals net operating income. The lease at issue is a triple net lease, which means the tenant bears the operating expenses. Hence, operating expenses are not a factor in determining the value of the property in this case.

The net operating income is divided by the capitalization rate resulting in the market value of the property. The capitalization rate is the expected rate of return on total dollars invested on an unfinanced or unleveraged basis.

value of the premises was $1,752,483, based on the projected gross income with a 15 percent vacancy rate, and capitalized at 9.5 percent. The trial court concluded that the leased premises would have had a value of "at least $1,442,221" had Arden fulfilled its obligations under the repair and restoration covenants of the lease. The trial court relied on Mr. Krippaehne's testimony and accepted a figure close to the lowest of the three values calculated utilizing the income approach while recognizing that the value was in all likelihood higher. Thus, the testimony of a witness the trial court found credible is consistent with the trial court's finding of value.

The second value necessary to determine diminution of market value is the actual value of the premises as the lessee left them. Mr. Krippaehne and Mr. Logan testified that the value of the buildings as Arden left them was zero and that the buildings were actually a liability against the land. Thus, the cost of demolishing the buildings would have to be taken into account in valuing the land. Mr. Logan valued the land at $504,000. He estimated the cost of demolition to be $119,824, giving the land a book value of $384,176. Mr. Krippaehne assigned a value of $490,000 to the land. He testified that the cost of demolition would have to be subtracted from that value.

Arden argues that *Fisher* required the trial court to make a finding on the actual value of the premises, and its failure to do so is error. Since there was testimony at trial by two of Fisher's witnesses, whom the trial court considered credible, that the value of the buildings in the condition Arden left them was zero, the trial court's failure to make a finding on this issue in reaching its conclusion that diminution in value exceeded the cost of restoration is harmless. Report of Proceedings, at 1762–63, 3620.

Taking the value accepted by the trial judge, $1,442,221, and the testimony that the actual value of the buildings was zero, the diminution in market value is the difference between $1,442,221 and the value of the land. Thus, using Mr. Krippaehne's land value of $490,000, the diminution in

market value of the premises is at least $952,221. Taking into account demolition costs, the diminution in market value of the premises is more than $1 million.

The trial court found the cost of repair and restoration to be $949,931. Substantial evidence supports the values used in determining diminution in market value and Arden does not argue that the trial judge's finding of cost of restoration is erroneous. Therefore, since the cost of restoration yields the lesser amount, that is the appropriate measure of damages, and the trial judge did not err.

The trial court did not abuse its discretion in refusing to take additional evidence. There was ample evidence regarding market value presented at trial. At least seven values using various valuation methods were testified to in the course of the trial. Since substantial evidence supports the value the trial judge chose out of the range of values presented, we will not second–guess his choice.

## II

Arden claims that the trial court erred in holding that the installations made in the warehouse constructed pursuant to the 1926 addendum were not part of the building's original condition, and, thus, Arden was required to remove them. Arden argues that this court's opinion in *Fisher* held that initial installations were not alterations. Thus, the lessor owned them and the lease did not obligate Arden to remove them.

*Fisher* held that the original condition of buildings constructed under the 1923 lease included installation made by the lessee pursuant to paragraph 27. Paragraph 27 of the 1923 lease required the lessee to install any equipment necessary to its business as part consideration for the lease. The 1926 addendum did not incorporate paragraph 27 so any installations were not required and were not part consideration.

*Fisher* did not deal with the warehouse; however, it clearly held that original condition meant required installations under paragraph 27. The 1926 addendum authorizing

the warehouse did not require any installations to be made or make them part consideration. Any installations the lessee made in the warehouse during initial construction were alterations covered by paragraph 11 of the original lease. Thus, Arden was required to remove them to restore the warehouse to its original condition and the trial court did not err.

## III

The trial court directed interest on the judgment to run from the date of the original judgment in 1983. The statute authorizing postjudgment interest states that judgments bear interest from the date of entry, provided, "where a court is directed on review to enter judgment on a verdict or in any case where a judgment entered on a verdict is wholly or partly affirmed on review, interest on the judgment or on that portion of the judgment affirmed shall date back to and shall accrue from the date the verdict was rendered." RCW 4.56.110(3).

 Awards reversed on review do not bear interest. However, the parties rely on a Court of Appeals decision that adds a gloss to situations where an appellate court reverses the award by distinguishing between modification and vacation. *Fulle v. Boulevard Excavating, Inc.*, 25 Wn. App. 520, 522, 610 P.2d 387, *review denied*, 93 Wn.2d 1030 (1980) held that interest runs from the date of the original judgment where the appellate court "merely modifies the trial court award and the only action necessary in the trial court is compliance with the mandate," while interest runs from the new judgment where the court "has reversed the trial court judgment and directed that a new money judgment be entered . . .". Case law from other jurisdictions supports this distinction. *See generally* Annot., *Date From Which Interest on Judgment Starts Running, as Affected by Modification of Amount of Judgment on Appeal*, 4 A.L.R.3d 1221 (1965 & Supp. 1978).

*Fisher* reversed portions of the original judgment. The trial court was directed to consider the two alternative

measures of damages on remand. Thus, an issue remained to be determined. The court stated, "The trial court is directed to use this approach in *deciding* the appropriate measure of damages for Arden's breach on remand." (Italics ours.) *Fisher,* at 844. Thus, more was required than recomputation. Had the trial court found diminution in market value to be less than the cost of restoration, it would have discarded the original award and awarded damages on a new basis. Under those circumstances, interest would have run from the date of the new judgment. That the trial judge still found the cost of restoration to be the appropriate measure of damages on remand does not mean that the old judgment was merely recalculated. This court left it in the trial court's hands to determine damages in accordance with its decision concerning diminution and cost of repair and restoration. The mandate necessitated new findings and a new judgment, not a simple mathematical computation. *See Yarno v. Hedlund Box & Lumber Co.,* 135 Wash. 406, 237 P. 1002 (1925) (where appellate court leaves trial court with nothing more than mathematical calculation and action was not its decision but act performed under direction of appellate court, interest runs from date of original judgment).

The same holds true for the attorney fees award. This court required the trial court to make findings as to what portion of time counsel devoted to the commissive waste claim and to reassess the attorney fees. This court stated, "We direct the trial court to *determine* what portion of Fisher's attorneys' services would have been provided had only the commissive waste claim been raised, and to award only those fees attributable to those services." (Italics ours.) *Fisher,* at 850. The trial court could not merely recalculate; it had to make determinations of what Fisher's attorneys would have done had they brought only the waste claim. The exercise of discretion involved here removes it from the modification situation.

The trial court erred in directing interest to run on the portions of the judgment reversed by this court from the

date of the original judgment. This court's reversal wiped out the original judgment and required new findings and a new judgment. Thus, interest on the damages for cost of restoration and the award of attorney fees must run from the date of the new judgment—December 15, 1988.

## IV

Several issues pertain to the question of attorney fees: first, whether the trial court abused its discretion in its award of attorney fees for the commissive waste claim; second, whether the attorney fees should be computed based on the attorneys' historical hourly rates or current hourly rates to give effect to inflation and the time value of money; and finally, whether Fisher is entitled to attorney fees incurred on remand in establishing the amount of time spent on the commissive waste claim.

■ The standard of review of a fee award is manifest abuse of discretion. *Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 65, 738 P.2d 665 (1987). Accordingly, the scope of appellate review is narrow. The trial court made detailed and extensive findings on the issue and carried out the mandate of this court to the best of its ability. The trial court did not abuse its discretion in reducing the fee award by 20 percent for time spent outside of trial and by 15 percent for time spent in trial.

The trial court computed the award based on the attorneys' hourly rates in effect at the time the services were rendered. Fisher argues that either current hourly rates or historical rates adjusted to account for inflation and loss of interest is the proper measure so it will not be deprived of the time value of the money.

Fisher relies on federal cases involving public interest litigation. Most of the cases which use current rates or adjusted historic rates involve attorney fees awards under 42 U.S.C. § 1988 (1982), the Civil Rights Attorneys' Fees Awards Act of 1976. This federal fee shifting statute authorizes the court to award reasonable attorney fees to the prevailing party in a civil rights suit as costs paid by

the defendant. Other types of cases which engage in this form of fee enhancement are class action suits for which fees are authorized under Fed. R. Civ. P. 23 and the common fund doctrine.

The legislative purpose of fee shifting is to provide an incentive for private enforcement of congressional statutory policy. Note, *Attorney Fee Contingency Enhancements: Toward a Complete Incentive To Litigate Under Federal Fee–Shifting Statutes,* 63 Wash. L. Rev. 469, 470 (1988). There are well over 100 federal fee–shifting statutes. 63 Wash. L. Rev. at 469.

> The availability of an attorney fee encourages individuals injured by discrimination to seek judicial redress. . . .
> . . . If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest . . ..

(Footnote omitted.) *Copeland v. Marshall,* 641 F.2d 880, 889 (D.C. Cir. 1980) (quoting *Newman v. Piggie Park Enters., Inc.,* 390 U.S. 400, 401–02, 19 L. Ed. 2d 1263, 88 S. Ct. 964 (1968)). Such awards encourage attorneys to take potentially risky cases with clients who frequently cannot afford to pay an attorney. The goal is to attract competent counsel without producing a windfall to attorneys. *Blum v. Stenson,* 465 U.S. 886, 893–94, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984).

The reasoning behind using current rates or adjusting historic rates to account for inflation is to compensate the attorney for delay in payment or the risk of losing and not getting paid at all. The assumption is that attorneys who take these cases do not get paid until a final judgment in their favor is rendered. *See, e.g., Lightfoot v. Walker,* 826 F.2d 516, 523 (7th Cir. 1987); *Daly v. Hill,* 790 F.2d 1071, 1081 (4th Cir. 1986); *National Ass'n of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1328 (D.C. Cir. 1982). Thus, attorneys may have cash flow problems and are deprived of the value of the use of the money in the meantime. *Copeland v. Marshall, supra* at 893.

■ The situation at bar does not involve the same public policy considerations. This is not public interest litigation, but rather a dispute between two private parties over a lease affecting only the parties. Fisher has paid its attorney fees all along so its attorneys have not been deprived of the use of the money. Fisher would be liable for its attorney fees regardless of the outcome of the case.

The public interest cases make an effort to approximate the result that would occur in private litigation. *Ramos v. Lamm,* 713 F.2d 546, 555 (10th Cir. 1983) ("We think that awarding compensation at current rates will roughly approximate periodic compensation adjusted for inflation and interest and will obviate the necessity of guessing when periodic billings would have been made and paid in an analogous private practice situation."). Accordingly, the cases exclude application of their methodology in the private litigation arena because they are attempting to give public interest attorneys the benefits of private practice. The presumption underlying the cases is that attorney fees in private litigation need no court created enhancement.

Fisher argues that it is entitled to the time value of its money because of the delay in reimbursement by Arden. The focus of the federal cases is on the attorney and encouraging attorneys to vindicate important public policy, while Fisher focuses on the client's loss of investment capability. Allowing an enhancement of the fee award to take into account lost interest amounts to an award of prejudgment interest. The trial court made no finding of prejudgment interest and Fisher has made no claim of entitlement to prejudgment interest.

The purpose for basing attorney fees awards on current rates or adjusted historical rates in public interest litigation makes the authority Fisher relies on inapposite. Fisher makes no claim that important public policies are involved or that its attorneys have suffered from any delay in payment. We will not extend fee enhancement beyond civil rights litigation.

Litigation between private parties, seeking to enforce no important right affecting the public interest, is not the appropriate forum for attorney fee enhancement. The award of attorney fees is not the sole source of compensation for the attorney. Rather the award is reimbursement to the client for fees already paid.

■ The trial court awarded Fisher its attorney fees incurred on remand in establishing its time spent on the commissive waste claim. The general rule is that time spent on establishing entitlement to, and amount of, a court awarded attorney fee is compensable where the fee shifts to the opponent under fee shifting statutes. 2 M. Derfner & A. Wolf, *Court Awarded Attorney Fees* ¶ 16.02[3] (1989). *See also Daly v. Hill, supra* (time spent defending entitlement to attorney fees compensable); *Copeland v. Marshall, supra* (time spent litigating the fee award itself compensable).

Given the trial court's discretion in the area of attorney fees, we cannot say the trial court erred in making this award.

V

Substantial evidence supports the trial court's conclusion that the proper measure of damages in this case is the cost of restoration. Arden sustained its burden of going forward with evidence of diminution but Fisher sustained the ultimate burden of persuasion that restoration costs were less.

Since the 1926 lease and addendum did not incorporate paragraph 27 of the 1923 lease and did not require the installations made during the initial construction of the warehouse, the original condition of the warehouse did not include the lessee's initial installations. The trial court did not err in finding that Arden's restoration obligation included removing the alterations made during the construction of the warehouse.

In 1986, this court reversed the trial court's 1983 holdings regarding restoration damages under the 1923 lease and attorney fees. On remand the trial court needed to exercise its discretion and make new findings on these issues in

order to comply with this court's mandate. Thus, the trial court did more than mere recalculation. Accordingly, post-judgment interest on the awards of restoration damages and attorney fees properly runs from the date of the new judgment.

The trial court did not abuse its discretion in the manner in which it segregated the attorney fees for the commissive waste claim. It properly based the award on counsel's historical hourly rates. Case law does not support an adjustment for time value or inflation in this case. This is not a situation analogous to the public interest litigation in which courts enhance attorney fees awards to take account of inflation, delay in payment and risk of loss. An award of attorney fees for time spent in figuring out the time incurred in the commissive waste claim is not improper.

Accordingly, we affirm the trial court's findings that the cost of restoration is the proper measure of damages and that the original condition of the warehouse did not include Arden's installations. We affirm the trial court's award of attorney fees. We reverse the trial court's award of post-judgment interest and direct that interest shall run from the date of the December 1988 judgment.

BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.