# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Custody of | ) | No. 78933-3-I |
| | ) | |
| A.T. and S.T., | ) | |
| | ) | |
| Children. | ) | |
| | ) | |
| MICHAEL TEPPER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| and | ) | |
| | ) | |
| ORIT TEPPER, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: November 18, 2019 |
| | ) | |

MANN, A.C.J. — Michael Tepper appeals the trial court's order denying his action under the Hague Convention on International Child Abduction seeking the return of his two daughters to Israel. Michael[1] contends the trial court erred when it found: (1) that the children's habitual residence is in Washington, (2) that Michael failed to exercise his right to custody,[2] and (3) that one of his daughters would be subject to a grave risk of harm if she returned to Israel. We affirm.

---

[1] We use the parties' first names to avoid confusion. No disrespect is intended.

[2] The Rabbinical Court of Israel uses the term "custody" in its order, and this opinion will use the term "custody" in reference to that order.

I.

Michael and Orit Tepper were married in September 2004 in Caesara, Israel.[3] Shortly thereafter they moved to Renton where they had two daughters, AT and ST, born in 2005 and 2008, respectively. In October 2014, Orit filed a petition for legal separation in Washington, which was later dismissed without prejudice. The couple entered into two post nuptial agreements in late 2014 that provided that the family move to Israel. The family moved to Israel in July 2015.

Within eight days of arriving, Michael departed Israel and returned to Washington. Michael's stated intent at that time was to remain in Washington and continue practicing medicine there until he was 75. In September 2015, Orit wanted to move back to the United States, but testified that Michael would not allow her to move back. In October 2015, Michael filed for divorce[4] before the Rabbinical Court of Israel.

Michael obtained no-exit orders that precluded Orit from removing the children from Israel.[5] These orders effectively prevented Orit from leaving the state of Israel with the children. The no-exit orders were in place for two years, until November 5, 2017. During this time, Michael resided in Washington.

On October 10, 2017, the Israel Rabbinical Court adopted the report of the social worker from Israeli social services and granted Orit primary residential time with the children. Michael was granted "staying times" of Sundays, Tuesdays, and every other weekend. The report summarized:

---

[3] The facts are taken largely from the trial court's unchallenged findings of fact. Unchallenged findings are verities on appeal. In re Contested Election of Schoessler, 140 Wn.2d 368, 385, 998 P.2d 818 (2000).
[4] The Rabbinical Court of Israel uses the term "divorce" in its order, and this opinion will use the term "divorce" in reference to that order.
[5] The "no-exit orders" are also referred to as "stay exit orders."

The mother and daughters came to Israel on 08/07/2015. For two years the father visited them in Israel once every two-three months for a period of one week to ten days at a time. He has recently rented an apartment, on a temporary basis in Haifa and has expressed his desire for determining regular staying arrangements including overnight stays.

In light of my last meeting with the father, where he expressed his desire to leave the country, contrary to what he said in the meeting we had before, where he expressed his desire to have a permanent relationship with his daughters, it is unclear where he will stay in the future.

The girls need stability and permanence in their lives. The lack of clarity experienced by the parents and the children in relation to the future of the spousal relationship and the place of residence creates confusion and distress for the girls, in addition to the immigration crisis they are experiencing, and may harm their emotional and physical development.

On November 6, 2017, during a two-day gap between the no-exit orders, Orit and the children left Israel and returned to Washington. On March 19, 2018, Michael commenced an action in King County Superior Court to return the children to Israel under the Hague Convention.

King County Superior Court Judge Matthew Williams, heard testimony and received evidence over multiple days beginning July 2, 2018. Judge Williams entered detailed findings of fact and conclusions of law on August 13, 2018.

At trial, the parties provided conflicting testimony. Michael testified that he blamed Orit for not seeing the children frequently and he denied petitioning for custody to go to Orit. Although Michael claimed to have "custody," he was unable to explain what that meant, or how he had exercised his visitation rights. Michael testified that he intends to live in Israel. However, the trial court found that Michael's testimony did not demonstrate an intent to relocate to Israel. Michael did not agree that AT suffered from acute stress disorder, and provided inconsistent testimony about therapy and family counseling for her.

3

The trial court did not find Michael's testimony credible, finding that he "testified inconsistently on many issues, and modified his testimony over the course of the trial to try to bring himself into alliance with the theory of the case being propounded by his attorneys."

Dr. Joanne Solchany, a licensed therapist, testified as a qualified expert in child psychology. Dr. Solchany provided treatment for AT and ST, and prepared formal evaluations for trial. She opined to a reasonable degree of psychological certainty that AT would be at a grave or significant risk of physical and psychological harm if returned to Israel, and that AT would be in an intolerable situation if returned to Israel. She also opined to a reasonable degree of psychological certainty that ST would be at a grave or significant risk of physical and psychological harm if returned to Israel without her mother.

Dr. Emitis Hosoda, Michael's former business partner, testified that Michael intended to reopen his practice in Maple Valley, Washington. Dr. Hosoda explained that Michael's "plan was to finish the court case in Israel, leave [Orit] in Israel, and return to the United States with the girls."

Orit testified that AT and ST were "in distress" in Israel. AT testified that she was happy to return to Washington and was adamant that she did not want to return to Israel. AT testified that she was suicidal, depressed, and confused in Israel, and that she would become suicidal if she returned.

The trial court denied Michael's petition on the basis that the credible evidence clearly established the children as habitual residents of Washington at the time Orit removed them from Israel. The court found that Michael failed to demonstrate by a

4

preponderance of the evidence that Michael and Orit had a shared intent to relocate the family to Israel. Additionally, the court found that "significant other indicia," demonstrated that the children were completely acclimated in Washington. The court also found that the evidence clearly established that the only reason the children remained in Israel was due to the no-exit orders, and despite living in Israel for two years, the children never acclimated.

The court also determined that Michael failed to prove by a preponderance of the evidence that he had exercised custody rights in Israel, which is an independent basis for denying the petition. Michael did establish that the Rabbinical Court in Haifa, Israel adopted a temporary visitation schedule, however he did not establish that he exercised his visitation rights from that schedule. The court also found that the testimony of Michael, Orit, and AT demonstrated that Michael did not follow the visitation schedule ordered by the Rabbinical Court.

Finally, the court determined that Orit established an exception to Article 3 by clear and convincing evidence. The court found that the evidence is "unequivocal" that if AT were to be returned to Israel, there is a grave risk that she would be subject to harm by suicide. The court found that the evidence did not sufficiently demonstrate that ST would be at a grave risk of harm if returned to Israel.

Michael appeals.

II.

Michael contends the trial court erred when it concluded: (1) that the children's habitual residence is in Washington, (2) that Michael failed to exercise his right to

custody, and (3) that one of his daughters would be subject to a grave risk of harm if she returned to Israel.

"Findings of fact are reviewed under a substantial evidence standard, defined as a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true." Sunnyside Valley Irr. Dist. v. Dickie, 149 Wn.2d 873, 879-80, 73 P.3d 369 (2003). The party claiming error has the burden of showing that a finding of fact is not supported by substantial evidence. Fisher Props., Inc. v. Arden-Mayfair, Inc., 115 Wn.2d 364, 369, 798 P.2d 799 (1990).

"If the standard is satisfied, a reviewing court will not substitute its judgment for that of the trial court even though it might have resolved a factual dispute differently." Sunnyside Valley, 149 Wn.2d at 880. There is a presumption in favor of the trial court's findings. Fisher, 115 Wn.2d at 369. As the trial court is in a better position to evaluate the credibility of witnesses, we do not substitute our judgement for the trial court's when reviewing findings of fact. Fisher, 115 Wn.2d at 369-70.

Here, because Michael failed to challenge specific findings of fact, we treat the trial court's finding as verities. In re Contested Election of Schoessler, 140 Wn.2d 368, 385, 998 P.2d 818 (2000).

A.

Michael's petition to return the children is governed by the Convention on the Civil Aspects of International Child Abduction (the Hague Convention). The United States adopted and implemented the terms of the Convention through passage of the International Child Abduction Remedies Act (ICARA), Pub. L. No. 100-300, 102 Stat.

437 (1988), which was codified at 42 U.S.C sections 11601-11610. The Convention provides that:

> Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned stall order the return of the child forthwith.

Hague Convention, Article 12.

Michael contended that the children were wrongfully removed from Israel. Article 3 of the Hague Convention provides that

> The removal or the retention of the child is to be considered wrongful where −
>
> a) it is in breach of rights of custody attributed to a person . . . either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.
>
> The rights of custody mentioned . . . above may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

Hague Convention, Article 3; Abbott v. Abbott, 560 U.S. 1, 8, 130 S. Ct. 1983, 1989, 176 L. Ed. 2d 789 (2010).

> When applying this provision, the court answers four questions:
>
> (1) When did the removal or retention at issue take place?
> (2) Immediately prior to the removal or retention, in which state was the child habitually resident?
> (3) Did the removal or retention breach the rights of custody attributed to the petitioner under the law of the habitual residence?
> (4) Was the petitioner exercising those rights at the time of the removal or retention?

Mozes v. Mozes, 239 F.3d 1067, 1070 (9th Cir. 2001).

Michael challenges the trial court's conclusions for questions two through four, which concern habitual residence and custody. We address each in turn.

B.

Michael first argues that the trial court erred when it found that the children's habitual residence was in Washington. Michael argues that overwhelming evidence demonstrates that the parents' last settled intent was to live in Israel. Michael asserts also that the children were acclimated in Israel.

To determine whether the Hague Convention applies, the central or threshold question is whether the children were habitually resident in a contracting state. Asvesta v. Petroutsas, 580 F.3d 1000, 1017 (9th Cir. 2009); Tsarbopoulos v. Tsarbopoulos, 176 F. Supp. 2d 1045, 1048 (E.D. Wash. 2001).

The trial court began its habitual residence analysis by examining the parents' "shared mutual intent." The parents' shared settled intent is the primary factor for determining the habitual residence of infant children. Tsarbopoulos, 176 F. Supp. 2d at 1049. When the parents lack such shared intent, a prior habitual residence is deemed replaced only where "the objective facts point unequivocally" to this conclusion. Mozes, 239 F.3d at 1082.

The trial court found that Orit originally intended to establish residence with Michael and the children in Israel, but that her intent soon changed.

> [T]he Court finds that the mother demonstrated a clear intent to establish residence in Israel prior to leaving the United States. She expressed a desire to return to Israel to work on their marriage, and to be close to her family. She planned to obtain Israeli passports for the children in anticipation of a planned vacation back to the U.S.

8

The intent on the part of the mother was based on her mistaken belief that she could resurrect the marriage with the father once the parties established themselves in Israel.

However, this intent on the part of the mother quickly evaporated upon arrival in Israel. It is clear that by September or October the mother intended to return to the United States, and no longer had the intent to reside within Israel.

The trial court next determined that Michael failed to demonstrate his intent to relocate to Israel.

It is clear that he was coerced into allowing the mother and children to relocate to Israel in July of 2015. He did not want to relocate. He stayed a minimal amount of time, then left abruptly. Upon his return to the United States, he did not take steps to move forward with a relocation, and it is clear that he actually began other extra-marital relationships.

Additionally, the court notes that it had the opportunity to observe his manner and demeanor. The father testified inconsistently on many issues, and modified his testimony over the course of the trial to try to bring himself into alliance with the theory of the case being propounded by his attorneys. The court did not find him credible, and does not find that he has demonstrated any shared intent to relocate the family to Israel.

Specifically, the Court finds that the father has failed to demonstrate by a preponderance of the evidence that there was a shared intent to relocate the family to Israel.

The trial court based its determination that Michael failed to demonstrate a shared intent to relocate the family to Israel based on numerous unchallenged findings, including: (1) Michael's statements to his medical partner of his intent to move Orit to Israel, divorce her, then return to Washington with the children, (2) Michael's intent to close his medical practice in Enumclaw not to move to Israel, but instead to relocate to a larger practice in Maple Valley, (3) the evidence that Michael was living at the Renton home with his girlfriend, and (4) Michael had made no effort to market the Renton home for sale, including conduct any repairs necessary for a potential sale.

The trial court's determination that Michael failed to demonstrate a shared mutual intent to relocate the children to Israel is supported by substantial evidence.

The trial court further noted that shared intent is only one factor the court considers in making the habitual residence determination. The court explained, "in this case, the Court finds that even if the parents had been able to demonstrate a shared intent to relocate, that the other factors related to the determination of habitual residence require that the Court find that Israel is not the habitual residence of the children."

The trial court relied upon the "compelling testimony that both children were fully and completely acclimated into their home environment in Renton, Washington." As the court explained:

> The children in this case were not infants when they were relocated to Israel. Quite the opposite, the court heard compelling testimony that both children were fully and completely acclimated into their home environment in Renton, Washington. The children were not only well acclimatized, they were succeeding in school, activities, and had active social lives. On their return, they demonstrated that Renton was their habitual residence, by once again entering and succeeding in school, activities and their social lives.
>
> For their own reasons, the parents made the decision to uproot the children and relocate to Israel. The evidence established that neither parent consulted with the children. The evidence established that neither parent considered the challenges that the children would face in relocation to Israel. Minimal to no consideration was given to any process of acclimatization of the children to the new environment in Israel.
>
> The evidence is clear that within weeks of the move to Israel, the mother and children were clear that the move to Israel was a mistake. The evidence is clear that but for the legal action of the father in obtaining a no-exit order, the children would have been returned to their habitual residence in Renton, Washington.
>
> Despite being forced to remain in Israel for over two years, the children did not acclimatize. . . . Within weeks, the children were requesting to return to

10

the United States. They never fully acclimatized. The evaluations performed by the social workers in Israel support this conclusion.

The trial court further explained:

> The evidence clearly established that, that absent the action by the father in obtaining the No-Exit Order from the Rabbinical Court, the children would have been returned to the United States in 2015. The only reason why the children were compelled to remain within the State of Israel for two years was the action of the father, which was instituted with no consideration of the serious need of the children to return to their habitual residence in the United States. Despite being forced to remain in Israel for over two years, the children did not acclimatize.
>
> Although both children were placed in school, they struggled with the culture and the language. The evidence established that they never fully adapted to life in Israel. They had minimal social contacts, sports programs, or other academic activities available to them in Israel.

The trial court based its determination on the testimony of the parties, Dr. Solchany, and of AT, which it found compelling.[6]

Substantial evidence supports the trial court's habitual residence determination: the children's habitual residence is in the United States, not Israel.

## C.

While the trial court concluded that the habitual residence for the children was Washington, it further explained that even if not, Michael failed to demonstrate that he met the other tests required by Article 3 of the Hague Convention: that he failed to exercise his rights to custody as granted by the Israeli Rabbinical Court. Mozes, 239

---

[6] Michael contends that Dr. Solchany's reports are based on hearsay self-reports of the children. Washington Rule of Evidence 803(a)(4) provides that "statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment," are not excluded by the hearsay rule. Dr. Solchany's reports were based on her therapy sessions with AT and ST. These sessions fall within the hearsay exception for statements made for the purposes of medical treatment. Dr. Solchany's reports are not barred as hearsay.

F.3d at 1070. Michael contends that the trial court erred in finding that he had not exercised his custody rights.[7] We disagree.

> As the trial court explained:
>
> The petitioner [Michael] established by a preponderance of the evidence that the Regional Rabbinical Court in Haifa adopted as a temporary visitation schedule the visitation recommendations of the court social worker, Ahuva Vinograd.
>
> That visitation schedule established that the children would reside with the mother, but then would have visitation on "Sundays, Tuesdays and every other weekend on a Saturday night."
>
> Ironically, that same report noted that:
>
> In light of my last meeting with the father, where he expressed his desire to leave the country, contrary to what he said in the meeting we had before, where he expressed his desire to have a permanent relationship with his daughters, it is unclear where he will stay in the future.
>
> The petitioner has the burden of establishing that he exercised those visitation rights. Although, he testified that he occasionally visited his daughters when he returned to Israel, his testimony, the testimony of the Respondent, and of the child AT, made it clear that he failed to follow the visitation schedule ordered by the Rabbinical Court.
>
> Accordingly, the Court finds that Petitioner has failed to prove by a preponderance that he exercised custody rights that may have been granted by the Rabbinical Court.

Substantial evidence supports the trial court's determination that Michael failed to exercise his custody rights.

---

[7] Michaels argues that he exercised custody through ne exeat rights when he filed the no-exit orders. A ne exeat right is "the authority to consent before the other parent may take the child to another country." Abbott, 560 U.S. at 5. In other words, Michael argues that he was exercising his rights to custody by prohibiting the children, and therefore Orit, from leaving Israel while he moved back to Renton, living in the former family home, and continuing his medical practice. We reject this argument.

D.

Even if the trial court had concluded that the children's habitual residence was Israel, it does not necessarily mean that return is automatic. There is an exception to the Hague Convention under Article 13(b):

> Notwithstanding the provisions [above, this Court] is not bound to order the return of the child if the person ... which opposes its return establishes that –
>
> b) There is grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.

As explained by the court in Tsarbopoulos:

> In the alternative, if the Hague Convention were to apply, where there is clear and convincing evidence that a return to the "habitual residence" would pose a grave risk of harm to the children, the Hague Convention's Article 13(b) provides an exception to the requirement that a court order the return of the children.

Tsarbopoulos, 176 F. Supp. 2d at 1057.

While not necessary to the trial court's decision since it found the children's habitual residence was Washington, the court also concluded that the exception did not apply because there was a grave risk to AT. Michael contends that the trial court erred in concluding a grave risk of harm. We disagree.

The trial court explained:

> With respect to the Child ST, the court notes that the evidence establishes that the child ST suffers from Post Traumatic Stress Disorder as a result of her being compelled to move and remain in Israel. It was clear that a separation from her mother would result in emotional harm to ST. However, the evidence was not sufficient for this Court to conclude by clear and convincing evidence that a return to Israel (taken by itself), would subject the child to emotional or physical harm.
>
> The Court's finding with respect to the Child AT is different. Despite the attempts of the father to deny or minimize the distress of the child AT, the

13

evidence here is unequivocal. If the child AT is returned to Israel she suffers from a significant risk that she will attempt or be successful in committing suicide. For the reasons stated above in this Court's findings of Fact, the Court finds by clear and convincing evidence that the return of the child AT to Israel would subject her to physical and emotional harm.

The evidence supporting this conclusion included Dr. Solchany's reports and testimony and AT's own testimony. Substantial evidence supports the trial court's grave risk of harm determination.[8]

### III.

Orit seeks attorney fees under RAP 18.9 for Michael's failure to expressly challenge enumerated findings, which Orit alleges rendered his claims without merit and frivolous. Under RAP 18.9(a), a party is subject to sanctions if they file a frivolous appeal. As this court has explained,

> An appeal is frivolous if there are no debatable issues on which reasonable minds might differ and it is so totally devoid of merit that there is no reasonable possibility of reversal. All doubts as to whether the appeal is frivolous should be resolved in favor of the appellant. An appeal that is affirmed simply because the arguments are rejected is not frivolous.

In re Marriage of Schnurman, 178 Wn. App. 634, 644, 316 P.3d 514 (2013).

Orit has not demonstrated that the appeal had no debatable issues on which reasonable minds might differ and it is so totally devoid of merit that there is no

---

[8] Alternatively, Michael argues that the trial court erred as a matter of law by failing to conduct an undertakings analysis to alleviate AT's grave risk of harm. Michael argues that the trial court is obligated to perform an undertakings analysis under the Hague Convention, but recognizes that the error is harmless if this court upholds the trial court's findings of habitual residence and custodial rights. Because we affirm the habitual residence and custody determinations, even if the court erred, this error is harmless.

reasonable possibility of reversal. Because all doubts as to whether an appeal is frivolous should be resolved in favor of the appellant, we deny fees under RAP 18.9.[9]

We affirm.

_____
Mann, ACJ

WE CONCUR:

_____          _____

---

[9] Orit also requests attorney fees under RCW 26.09.140. Because this case was not brought under Title 26.09, Orit is not entitled to fees under RCW 26.09.140. RCW 26.09.140 applies only to cases brought under Title 26.09.