IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| PPF AMLI 1260 REPUBLICAN STREET, LLC, a Delaware limited liability company, | No. 85666-9-I |
| Appellant, | DIVISION ONE |
| v. | |
| JOHN WILSON, King County Assessor, | UNPUBLISHED OPINION |
| Respondent. | |

BOWMAN, J. — In 2017, the King County Assessor (Assessor) mistakenly underassessed PPF AMLI 1260 Republican Street LLC's (AMLI's) 10-parcel, two-building, mixed-use development after AMLI requested the Assessor merge the 10 tax parcels. During the merge, the Assessor failed to add the value of the "killed" parcels to the 1 "surviving" parcel. The Assessor corrected the mistake under RCW 84.48.065, resulting in a higher tax bill for AMLI. AMLI appealed the correction to the King County Board of Equalization (BOE), which affirmed the correction. AMLI then appealed to the Washington State Board of Tax Appeals (BTA), which granted summary judgment in favor of the Assessor. AMLI now appeals to this court, arguing the correction was an impermissible revaluation of its property. We conclude that the Assessor's correction was improper under RCW 84.48.065 and that the BTA erred by granting summary judgment. We reverse the BTA's decision on summary judgment and remand for consideration of whether other lawful bases support the revaluation and, if not, to vacate the

Assessor's value correction.

## FACTS

AMLI owns a mixed-use development in Seattle's South Lake Union neighborhood. It consists of two buildings with restaurant and retail space on the ground floors and apartments on the upper floors. AMLI built the development on 10 tax parcels. "Economic Unit 1" consists of 2 parcels and one building and "Economic Unit 2" consists of 8 parcels and the second building.

In April 2017, AMLI requested the Assessor merge the development into a single parcel for tax purposes. On June 13, 2017, while the merge request was pending, the Assessor's apartment appraiser valued AMLI's property. Unaware of the merge request, the appraiser valued each of the 10 parcels separately for the 2017 tax year. The appraiser used the income appraisal method[1] to value Economic Unit 1 at $59,261,000. But the appraiser used a weighted appraisal method[2] to value Economic Unit 2 at $92,960,000. The appraiser entered the value of each parcel into the Assessor's value tracking software, "Real Property." The total value for all 10 parcels was $152,221,000.

The next day on June 14, 2017, the Assessor completed AMLI's merge request, consolidating the characteristics of AMLI's property into a single tax

---

[1] Appraisers have three general methods to estimate the market value of property: the comparative sales approach, the cost approach, and the income approach. *Petrogas Pac. LLC v. Xczar*, 24 Wn. App. 2d 549, 561, 520 P.3d 1077 (2022), *review denied*, 1 Wn.3d 1019, 532 P.3d 158 (2023). The income approach calculates the value of the property by "divid[ing] the net operating income by [the] capitalization rate." *See Fisher Props., Inc. v. Arden-Mayfair, Inc.*, 115 Wn.2d 364, 370, 798 P.2d 799 (1990).

[2] The record shows the appraiser used an average of the income approach, the comparative sales approach, and the estimated market value for the weighted method.

parcel. To accomplish the merge, the Assessor administratively selected the lowest numbered parcel with improvements as the "surviving" parcel. That parcel was part of Economic Unit 1 and reflected the value of a single parcel with the first building, totaling $53,193,800. And it eliminated, or "killed," the other nine parcels. But the Assessor inadvertently failed to add the value of the killed parcels—the land-only parcel of Economic Unit 1 and all of Economic Unit 2—to the surviving parcel. That is, the surviving parcel reflected the value of only one building and one parcel. In September 2017, the Assessor posted the erroneous value to its "assessment roll."[3] The King County Treasurer then sent AMLI its tax bill based on the erroneous assessment.

In December 2017, the Assessor learned of the error. So, in March 2018, the Assessor updated the value of AMLI's property and processed a tax roll correction. The Assessor issued a letter to AMLI, notifying it of the correction to its real property value. The letter said that the Assessor made the change under RCW 84.48.065 because of a "[p]osting error." And it showed a new assessed value of AMLI's property of $140,520,000 instead of $152,221,000, which was the total value the appraiser entered into Real Property in June 2017. But by that time, the Assessor's assessment and subsequent tax rolls were "closed."

AMLI appealed the correction to the BOE. It argued the revision was unauthorized under RCW 84.48.065 and should be treated as omitted property under RCW 84.40.080. The BOE agreed that "the omitted building constitutes omitted property" under RCW 84.40.080 but found that the property was correctly

---

[3] An "assessment roll" is "the record which contains the assessed values of real and personal property in the county." WAC 458-14-005(4).

assigned its "true and fair value" of $140,520,000 under WAC 458-12-050(4).[4]

The BOE affirmed the revision.

AMLI then appealed to the BTA. The Assessor and AMLI cross moved for summary judgment. In its motion, the Assessor argued that the correction "was authorized under [the Assessor's] RCW 84.48.065 manifest error authority." AMLI argued that neither RCW 84.40.080 nor RCW 84.48.065 "authorize county assessors to retroactively increase the land and improvement values listed on the final assessment and tax rolls" because of a "posting error."

The BTA upheld the Assessor's action. It concluded that the property was not omitted from the tax rolls, so RCW 84.48.080 did not apply. But it concluded that the corrected assessment was authorized under the Assessor's authority to fix manifest errors under RCW 84.48.065. Accordingly, it granted summary judgment for the Assessor. AMLI filed for an exception to the BTA's decision, which the BTA denied.

AMLI petitioned for judicial review in the superior court. The parties agreed to direct review by this court, and the trial court certified this appeal for direct review under RCW 34.05.518.

ANALYSIS

AMLI argues the BTA erred by granting summary judgment for the Assessor because the Assessor's revaluation of AMLI's property was not permitted by statute. We agree.

---

[4] The BOE also adjusted the fair value of the property from $140,520,000 to $130,000,000. AMLI does not challenge this adjustment on appeal.

1. <u>Standard of Review</u>

The Administrative Procedure Act (APA), chapter 34.05 RCW, governs appeals from the BTA. *Dep't of Revenue v. GameStop, Inc.*, 8 Wn. App. 2d 74, 81, 436 P.3d 435 (2019). We review the BTA's actions de novo based on statutory interpretation. *Id.* If the plain language of a statute is unambiguous, we give effect to the statute's plain meaning as an expression of legislative intent. *Id.* The rules of statutory interpretation also apply to administrative rules and regulations. *Dep't of Licensing v. Cannon*, 147 Wn.2d 41, 56, 50 P.3d 627 (2002) (we interpret a WAC provision to ascertain and give effect to its underlying policy and intent). We will reverse a BTA decision if it is based on an erroneous interpretation or application of the law. *GameStop*, 8 Wn. App. 2d at 81 (citing RCW 34.05.570(3)(d)). The burden of showing the invalidity of the BTA's decision is on the party asserting invalidity. *Id.*

When an administrative decision is made on summary judgment, we "overlay the APA standard of review with the summary judgment standard." *Verizon NW, Inc. v. Emp. Sec. Dep't*, 164 Wn.2d 909, 915-16, 194 P.3d 255 (2008). So, we view the facts in the record in the light most favorable to the nonmoving party. *Id.* at 916. "Summary judgment is appropriate only where the undisputed facts entitle the moving party to judgment as a matter of law." *Id.* We grant summary judgment only if reasonable persons could reach but one conclusion from all the evidence. *Dep't of Revenue v. Advanced H2O, LLC*, 11 Wn. App. 2d 384, 393, 453 P.3d 1011 (2019).

2. <u>Statutory Background</u>

The Washington Constitution requires uniformity of all taxes on the same class of property within the territorial limits of the authority levying the tax. Article VII, § 1.[5] To comply with that mandate, the legislature has established a statutory process for county assessors, county treasurers, county boards of equalization, and the Department of Revenue (DOR) to calculate, levy, and collect taxes statewide. *See generally* Title 84 RCW.[6]

The taxation process starts with a county assessor, who values all parcels of taxable property in their county. RCW 84.40.040. The assessor must "determine as nearly as practicable the true and fair value of each tract or lot of land listed for taxation and of each improvement located thereon." *Id.* The assessor must "enter [100] percent of the true and fair value of such land and value of such improvements, together with the total of such [100] percent valuations, opposite each description of property on the assessment list and tax roll." *Id.* An assessor must also "maintain an active and systematic program of revaluation" of property "on a continuous basis." RCW 84.41.030(1).[7] "All taxable real property within a county must be revalued annually." *Id.*[8] The assessor updates the assessment list and subsequent tax roll with those

---

[5] *See also* WAC 458-07-010.

[6] *See also* Title 458 WAC.

[7] *See also* WAC 458-07-010 (the DOR requires county assessors to "value all taxable real property in the county on a regular, systematic, and continuous basis").

[8] Physical inspections of property must occur at least once every six years. RCW 84.41.030(1). But "[d]uring the intervals between each physical inspection of real property, the valuation of such property must be adjusted to its current true and fair value, such adjustments to be made once each year and to be based upon appropriate statistical data." RCW 84.41.041(1).

revaluations annually.  RCW 84.41.041(1).

By July 15 of the applicable tax year, county assessors certify their assessment rolls to their county's board of equalization.  RCW 84.40.320.  The board then equalizes[9] the assessments and conveys the roll to the DOR.  RCW 84.48.010(1), .080(1).  In September and October of the tax year, the DOR establishes equalization ratios for state-assessed companies and railroad operations.  RCW 84.48.080(1).  The DOR then levies taxes and apportions all the state taxes among the counties.  RCW 84.48.080(2).  Finally, the DOR certifies for public inspection its record of proceedings for the tax levies made for state purposes and the apportionment among the counties.  RCW 84.48.080(4).  After certification, the DOR transmits its record of proceedings to each county assessor, specifying the tax amount to be levied and collected for state purposes for the year.  RCW 84.48.110.

After a county assessor receives the DOR's record of proceedings, the assessor extends those state-wide taxes to their county's tax roll.  RCW 84.48.120.  The assessor then certifies the equalized assessed values to district tax officials, who calculate and certify back to the assessor the rates necessary to raise the authorized district-level taxes.  RCW 84.48.130; RCW 84.52.070.  When the district officials return their certified calculations, the assessor extends

---

[9] "Equalize" means

ensuring that comparable properties are comparably valued and refers to the process by which the county board of equalization reviews the valuation of real and personal property on the assessment roll as certified by the assessor, so that each tract or lot of real property and each article or class of personal property is entered on the assessment roll at [100] percent of its true and fair value.

WAC 458-14-005(12).

those rates to the tax roll. RCW 84.52.080(1). The assessor then certifies the roll to the county treasurer by January 15 of the next year for collection. RCW 84.52.080(4). The treasurer prepares and issues tax bills to taxpayers by March 15. RCW 84.56.010, .020(1), (2)(a).

3. AMLI's Tax Correction

AMLI argues the Assessor improperly revalued AMLI's property. It contends that the Assessor's error was an omission under RCW 84.40.080, but it is not correctable under the statute because the error was not apparent on the face of the tax roll. And AMLI argues the Assessor could not correct the issue as a manifest error under RCW 84.48.065 because the rolls were closed, and the statute did not authorize the Assessor to revalue AMLI's property. The Assessor argues that RCW 84.40.080 does not apply to these facts and that RCW 84.48.065 authorized the correction because "no revaluation occurred." We conclude that RCW 84.40.080 does not apply here but agree with AMLI that RCW 84.48.065 did not authorize the correction because the Assessor revalued the property.

A. RCW 84.40.080

AMLI argues that "after the assessment and tax rolls are closed, assessed values can be changed only as expressly authorized by statute," and RCW 84.40.080 "provides the exclusive procedure for assessing property or value that is omitted from assessment." AMLI is correct. But the error here does not amount to an omission.

8

RCW 84.40.080 addresses a county assessor's authority to assess taxes on properties omitted from a certified tax roll. Under the statute,

> [a]n assessor shall enter on the assessment roll in any year any property shown to have been omitted from the assessment roll of any preceding year, at the value for the preceding year, or if not then valued, at such value as the assessor shall determine for the preceding year, and such value shall be stated separately from the value of any other year. Where improvements have not been valued and assessed as a part of the real estate upon which the same may be located, as evidenced by the assessment rolls, they may be separately valued and assessed as omitted property under this section.

RCW 84.40.080. "Omitted property includes all real and personal property that was not entered on the assessment roll," but it "does not include . . . [r]eal or personal property that was accurately listed but improperly valued by the assessor." WAC 458-12-050(2).

The Assessor's apartment appraiser valued AMLI's property, and the Assessor listed the value on the assessment roll. And the line on the roll contemplated AMLI's entire property—the 10 merged parcels. The error was the failure to merge the values of the killed parcels with the value of the surviving parcel already listed on the assessment roll. That is, the roll accurately listed AMLI's real property, but the Assessor improperly valued it. So, the error does not amount to an omission, and RCW 84.40.080 does not apply. *See* WAC 458-12-050(2)(b).

B. <u>RCW 84.48.065</u>

The Assessor argues the BTA properly granted summary judgment under RCW 84.48.065. We disagree.

9

RCW 84.48.065 addresses an assessor's ability to cancel or correct manifest errors in the tax roll. Under the statute,

> [t]he county assessor or treasurer may cancel or correct assessments on the assessment or tax rolls which are erroneous due to manifest errors in description, double assessments, clerical errors in extending the rolls, and such manifest errors in the listing of the property that do not involve a revaluation of property.[10]

RCW 84.48.065(1)(a). "Manifest errors that do not involve a revaluation of property include the assessment of property exempted by law from taxation or the failure to deduct the exemption allowed by law to the head of a family." *Id.* Under WAC 458-14-005(14), the DOR defines "manifest error" to also include:

> [A]n error in listing or assessment, which does not involve a revaluation of property, including the following:
> (a) An error in the legal description;
> (b) A clerical or posting error;
> (c) Double assessments;
> (d) Misapplication of statistical data;
> (e) Incorrect characteristic data;
> (f) Incorrect placement of improvements;
> (g) Erroneous measurements;
> (h) The assessment of property exempted by law from taxation;
> (i) The failure to deduct the exemption allowed by law to the head of a family; or
> (j) Any other error which can be corrected by reference to the records and valuation methods applied to similarly situated properties, without exercising appraisal judgment.

The DOR defines "revaluation" as "a change in value of property based upon an

---

[10] An assessor may correct a manifest error involving revaluation where there was a "definitive change in the property's land use designation." RCW 84.48.065(1)(a). That is not at issue here.

exercise of appraisal judgment." WAC 458-14-005(19).[11]

Neither the statutory nor administrative codes define "appraisal judgment." If the legislature has not defined a statutory term, we may look to dictionary definitions. *Jones v. Dep't of Lab. & Indus.*, 17 Wn. App. 2d 437, 445, 486 P.3d 949 (2021). The dictionary defines "appraisal" as "a valuation of property by the estimate of an authorized person." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 105 (2002). And it defines "judgment" as "the mental or intellectual process of forming an opinion or evaluation by discerning and comparing." WEBSTER'S at 1223 (2002). So, "appraisal judgment" is the intellectual process of forming an opinion on the value of property by discerning or comparing.

As noted earlier, appraisers determine fair market value by one or more of three general appraisal methods: the comparative sales approach, the cost approach, and the income approach. *Tiger Oil Corp. v. Yakima County*, 158 Wn. App. 553, 563, 242 P.3d 936 (2010). But those methods usually produce a range of values. *Sahalee Country Club, Inc. v. Bd. of Tax Appeals*, 108 Wn.2d 26, 33-34, 735 P.2d 1320 (1987). So, appraisers can reconcile—or weigh— those values to produce a final appraised value. *Id.* "The appraiser calculates a final value estimate by placing greatest emphasis on the value generated by the method deemed to be most reliable." *Id.* at 34. The assessor is "afforded

---

[11] AMLI argues that the DOR's definitions of "manifest error" and "revaluation" are invalid because they conflict with the definitions in RCW 84.48.065(1)(a). We disagree. First, the DOR defined those terms under its authority to "[f]ormulate such rules and processes for the assessment of both real and personal property for purposes of taxation." RCW 84.08.010(2). Nor do the definitions conflict with those in RCW 84.48.065(1)(a). Rather, the rule adds examples of manifest errors to the nonexhaustive list in the statute. And the statute does not define "revaluation."

considerable discretion" to decide the proper valuation method. *Tiger Oil*, 158 Wn. App. at 564.

The BTA concluded that the Assessor did not exercise appraisal judgment in assigning a new value to AMLI's property because its correction merely "combines the initial partial valuation with the value of the characteristics not previously recorded to provide a correct value for the subject property." And, according to the Assessor, the correction "simply involved the input of the missing characteristic data and the valuation of the corrected parcel using the already selected income model." But those descriptions oversimplify what occurred here.

In June 2017, while AMLI's merge request was pending, an appraiser valued all 10 of AMLI's parcels separately and then calculated values for AMLI's two economic units based on the land and building values it assigned to each of the individual parcels. The appraiser used the income approach to value Economic Unit 1 but used a weighted approach to value Economic Unit 2. The appraiser entered the values into the Assessor's value tracking system Real Property.

When the merge went through, the Assessor combined the parcels under the single surviving parcel of Economic Unit 1—a single lot with one building. But the Assessor did not include the appraised value of the killed land-only parcel of Economic Unit 1 or any of Economic Unit 2. When the Assessor learned of that error, they processed a tax roll correction that added the land-only parcel of Economic Unit 1's value and all of Economic Unit 2's value to the surviving

parcel. Importantly, however, the Assessor abandoned the weighted value method that the appraiser previously applied to Economic Unit 2 and instead applied the income appraisal method to those parcels so that all the property under the merged parcel number was valued using the same approach. This changed the appraised value of Economic Unit 2 from $92,960,000 to $81,259,000.

Selecting and applying a different appraisal method for Economic Unit 2 involved an intellectual process used to formulate an opinion on AMLI's property value. This is more than just adding the already appraised value of Economic Unit 2 to the already appraised value of the surviving parcel. It involved the exercise of appraisal judgment. *See Wash. Beef, Inc. v. County of Yakima*, 143 Wn. App. 165, 172, 181, 177 P.3d 162 (2008) (Appraisers determine a property's fair market value, but "[f]air market value is a matter of opinion rather than of hard fact."). So, the Assessor's correction involved a revaluation of Economic Unit 2, which is prohibited under RCW 84.48.065(1)(a).[12]

---

[12] We note that WAC 458-07-015(5) appears to permit a revaluation under these circumstances. It provides that "[i]n certain circumstances the assessor is authorized to revalue real property, using appraisal judgment, after a value is certified for the current year," including "[w]hen property has been subdivided or merged." WAC 458-07-015(5)(f). Such revaluations "must not be arbitrary or capricious, nor violate the equal protection clauses of the federal and state [c]onstitutions, nor the uniformity clause of the state [c]onstitution." WAC 458-07-015(5). But at oral argument and in supplemental briefing, AMLI objected to our consideration of the WAC under the misimpression that we must turn a blind eye to any law not cited by the parties. And the Assessor disavowed the application of WAC 458-07-015(5) to this case altogether. So, we do not apply it in our analysis.

Because the Assessor's correction was improper under RCW 84.48.065, the BTA erred by granting summary judgment. We reverse the BTA's decision on summary judgment and remand for consideration of whether other lawful bases support the revaluation and, if not, to vacate the Assessor's value correction.

Bowman, J.

WE CONCUR:

Díaz, J.

Mann, J.